IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| J. L. HERREN & ASSOCIATES, P.C., ) | |
| Plaintiff, ) | |
| v. ) | CA No. 1: 13-cv-1314 (LMB/IDD) |
| MELISSA BRITTON ) | |
| Defendant. ) | |

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Plaintiff, J.L. Herren & Associates, P.C., by and through undersigned counsel, respectfully submits this Memorandum of Points and Authorities in support of its Motion for a Preliminary Injunction against Defendant Melissa Britton. The facts supporting the Motion are detailed herein and in Plaintiff's Amended Complaint (the "Am. Complaint"), which is attached hereto as Exhibit 1 and incorporated herein by reference, as well as the Declarations and Exhibits attached hereto.

## INTRODUCTION

This action arises out of the disloyal conduct of Melissa Britton, a former employee of J.L. Herren & Associates, P.C. ("Herren"), who *during her Herren employment*, used her position and her access to confidential information to solicit a Herren client to hire her, through her newly formed company, to perform work that otherwise would have been performed by Herren. When Herren learned of her scheme, it terminated her employment and requested the return of its property and information. As Herren has recently learned in the course of this litigation, rather than comply with Herren's request, with which she was contractually obligated

to comply, Britton uploaded the entire contents of her Herren laptop to her personal cloud storage, four days <u>after</u> she had been terminated from Herren, and then disabled the laptop to prevent Herren from accessing its own information.  Just a few days after leaving Herren, Britton returned to the same workplace, performing much of the same work she had performed while a Herren employee.   There she remains, in blatant violation of her contractual obligations to Herren.

      Herren now asks this Court to enter a limited preliminary injunction requiring Britton to return to Herren the information she stole, to prohibit Britton from continuing to access or use Herren's information, and to preclude her from using her ill-gotten position to further solicit any new or additional work from Herren's clients during the pendency of this litigation. Undersigned counsel certifies that she unsuccessfully sought consent from plaintiff's counsel to the requested relief.

## II.    STATEMENT OF FACTS

      Herren is a small government contractor, operating primarily in the Washington, D.C. metropolitan area.  <u>See</u> Amended Complaint ("Am. Compl.") ¶1.   A year out of college, Britton was hired by Herren in August 2006.  <u>Id</u>.  ¶5.  She was promoted several times, eventually becoming  the Program Manager for one of Herren's largest and most important contracts, the contract to provide Support Services to the Navy's Enterprise Resource Planning Program Management Office ("Navy ERP Contract").  Am. Compl.  ¶¶5-6.

      The Navy ERP Program Management Office, located in Annapolis, Maryland, manages the implementation of a Navy-wide software system, the Navy Enterprise Resource Planning system ("Navy ERP").   Navy ERP is a business management software system, which provides financial, acquisition and supply management functions to each Navy command, and integrates

complex business data into a single system. As the Navy implements Navy ERP, it has been retiring legacy systems. Recently, the Navy has begun transitioning from the implementation of ERP to the sustainment of the ERP system. Am. Compl. ¶7.

Britton is bound by certain obligations contained in a Retention Agreement executed by her on December 13, 2012 ("Retention Agreement"). Am. Compl. ¶¶3-4; Exhibit 2 (Retention Agreement). The Retention Agreement obligates Britton, among other things, to return Herren's property and information, not to use its confidential information for any purpose other than to further Herren's business, and not to solicit Herren's clients. Am. Compl. ¶¶35, 42, 70; Ex. 2, §§ 2, 3(i).

As Herren's PM for the Navy ERP contract, Britton interacted daily with Herren's client contacts in the Navy ERP Program Management Office and served as the "face" of Herren to the client. In addition, Herren was asked assist to facilitate meetings focused on the transition from implementation to sustainment of Navy ERP. These meetings included personnel from the Navy ERP Program Management Office in Annapolis, Naval Supply Command ("NAVSUP") Business Systems Center located in Mechanicsburg, Pennsylvania, among others. Am. Compl. ¶¶10-11. As the Program Manager for Herren, Britton assigned herself the task of facilitating these closed door meetings. During these meetings, which she attended on behalf of Herren as a Herren employee, Britton was introduced to, and became known to, the people in charge of Navy ERP Program Office transition within NAVSUP Business Systems Center Mechanicsburg, where the Navy is forming an office responsible for sustainment of the ERP program. Id.[1]

---

[1] In late April 2013, Britton approached Jeff Voth, Herren's President and her supervisor, to discuss the possibility of teaming with another company in order for Herren to provide its incumbent knowledge regarding the ERP Program Management Office to NAVSUP Mechanicsburg, which she had learned through her Herren employment, would be gaining work as the program transitioned to the sustainment phase. Am. Compl. ¶15. Britton suggested that

3

As Britton described it to Herren management:

> Late today Valerie [Navy ERP Program Manager] and the TD (Allen) were called to brief Dr. Zangardi (DASN C4I) down at the pentagon tomorrow morning. They have been planning a series of transition workshops this week, and Valerie/Allen asked me to facilitate the discussion tomorrow (between NAVSUP, SPAWAR, the PMO and resource sponsor) aimed at coming up with plan for staffing in sustainment and determining how money will flow from opnav to sustainment organizations. . . .
> I understand the importance of our teambuilding offsite tomorrow, however I also want to deliver on our obligation to advise ERP leadership through the transition to sustainment. I think this is especially important as we get ready for the recompete.

See Exhibit 3 (Email from M. Britton, May 20, 2013).

What she did *not* tell Herren was that three days before that email, she had solicited essentially this same work for herself, through her connections with Maga Design, a Herren teaming partner. See Exhibit 4 (Emails dated May 17, 2013, one with attachment). On May 17, 2013, Maga sent a proposal to NAVSUP Mechanicsburg to provide Navy ERP Sustainment Transition Support, and proposed to use Britton as a Strategic Advisor. Id. Maga even included Britton's resume. Id. On the same date, at nearly the same time, Maga sent this paper to Britton. Id. By virtue of the services Herren was providing to support the transition, NAVSUP Mechanicsburg is and was a client of Herren. Am. Compl. ¶13.

On July 12, 2013, Britton announced to Herren that she had formed her own company, Mission Effect L.L.C., that she was going to be performing work as a subcontractor to Maga Design, but that the services were not "in Herren's space." Am. Compl. ¶¶20-21. Britton later admitted that the CEO of Maga Design had told her that the opportunity belonged to Herren and that Britton should be doing the work as a Herren employee. Id. Maga's CEO also confirmed

---

they work with Maga Design to pursue this work for Herren. Voth agreed and asked Britton to follow up on that opportunity, but she never did. Id. ¶16. In hindsight, it is clear that Britton decided to usurp that opportunity for herself.

4

that he told Britton to work through Herren, but that Britton had refused to do so, after which Maga reluctantly agreed to subcontract to Britton's newly formed company. Id. ¶¶22-23. Herren learned from Maga that the work Britton intended to perform ostensibly for NAVSUP Mechanicsburg was virtually identical to that which she had been performing while a Herren employee. Id. ¶23.[2] Herren terminated Britton's employment as a result of her egregious self-dealing and disloyal conduct on July 16, 2013.

Although obligated to do so, Britton did not return to Herren's laptop promptly, or with its information intact. Rather, when Herren finally received the laptop, it was discovered that Britton had rendered the laptop unusable. See Exhibit 6, Declaration of Erik Palm ("Palm Dec."), ¶¶5-8. Britton installed a password system on her laptop herself, one not authorized or permitted by Herren. Id. ¶¶5-6.[3] To date, Herren has been unable to access the laptop or the information thereon. Id. Herren has just learned in recent days that, after she was terminated from Herren, but before rendering her laptop unusable, Britton uploaded the entire contents of the computer to her personal cloud storage. By doing so, Britton breached her Retention Agreement.

In fact, Britton's discovery responses confirm that the work she solicited and is now performing is virtually identical to the facilitation work she was performing as a Herren

---

[2] There can be no doubt that Britton was planning this competition with Herren, and soliciting this work, all the while collecting a Herren salary. Maryland's records reveal that she filed a trade name registration for Mission Effect on May 6, 2013 and she formed Mission Effect LLC on May 8, 2013. See Exhibit 5. It was only ten days later that she was soliciting work as a Maga subcontractor.

[3] Even during the pendency of this litigation, Britton has failed to provide access to the laptop. Though, though her counsel, she provided two potential passwords, but neither worked. See Exhibit 7, Declaration of J. Christopher Racich ("Racich Dec."), at ¶11. The Dell system Britton used to lock the laptop is set up that it can only be accessed by obtaining a new password from Dell, but doing so would wipe the laptop of all of its information. Palm Dec. ¶8. Herren is currently exploring forensic data recovery options to obtain the data from the computer, though doing so will destroy the hard-drive itself.

5

employee.  See Exhibit 8 (Britton's invoices to Maga); compare with Exs. 3, 4, Exhibit 9 (Excerpt of ERP Working Group Meeting Minutes May 21-23, 2013).  Although nominally working for NAVSUP Mechanicsburg, Britton is continuing to facilitate the TWIPT workgroups and attend the TIPT offsites, just as she did as a Herren employee.  See Ex. 8.

By the conduct described above, Britton has stolen a corporate opportunity that belonged to Herren, breached her employee duty of loyalty, breached her Retention Agreement and tortiously interfered with Herren's reasonable business expectancies, among other torts. Herren is irreparably harmed by having its confidential and proprietary information in the possession of a competitor.   Herren has also been irreparably harmed by the appropriation of its customer goodwill by Britton for her own benefit.  Britton ought to be required to return and not to access any of the Herren information she stole.  Further, until Herren's claim for permanent injunctive relief is resolved at a trial on the merits, Britton ought to be enjoined from using her ill-gotten gains – the position she now holds – to solicit any further work from Herren's clients, including any extension of her current contract.  Because Britton still has not returned to Herren all of Herren's confidential and proprietary information, and because she continues to have day-to-day contact with Herren's customers, Herren needs prompt injunctive relief to maintain the status quo and to prevent any additional irreparable harm.

### III.   ARGUMENT

#### A.   Legal Standard for Preliminary Injunctions.

District courts have the discretion to grant temporary restraining orders and preliminary relief prior to the adjudication of the underlying dispute. Federal Rule of Civil Procedure 65; *Quince Orchard Valley Citizens Ass'n, Inc. v. Hodel*, 872 F.2d 75, 78 (4th Cir. 1989).  In granting such motions, courts require a showing of each of the following four factors:  (1) that

the plaintiff is likely to succeed on the merits, (2) that the plaintiff is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in the plaintiff's favor, and (4) that an injunction is in the public interest. *The Real Truth About Obama, Inc. v. Federal Election Commission*, 575 F.3d 342, 346-47 (4th Cir. 2009) (*citing Winter v. Natural Resources Defense Council, Inc.* 555 U.S. 7 (2008)), *vacated on other grounds* 559 U.S. 1089 (2010). Moreover, when a motion for a temporary restraining order under Rule 65 is set for hearing with notice to the opposing parties, the Court may treat that motion as one for a preliminary injunction, thus securing the discretion to extend the injunctive relief beyond the 10- or 20-day period provided for in Rule 65. *See Ciena Corp. v. Jarrard*, 203 F.3d 312, 319-20 (4th Cir. 2000). As discussed below, Herren meets all the standards necessary for this Court to issue the limited preliminary injunctive relief sought at this time.

      B.    **Herren Will Continue to Suffer Significant Irreparable Harm If The Court Does Not Enjoin Defendant**.

The "improper use or disclosure of confidential information constitutes irreparable harm." *Pari Respiratory Equip., Inc. v. Groskopf*, 2007 WL 2745322, *2 (E.D. Va. Sept. 18, 2007). Further, when one party tortiously interferes with another's customer relationships and, as a result, the customer relationships are placed at risk of damage or loss, courts do not hesitate to find a risk of substantial irreparable harm. *See Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 552 (4th Cir. 1994) ("[W]hen the failure to grant preliminary relief creates the possibility of permanent loss of customers to a competitor or the loss of goodwill, the irreparable injury prong is satisfied."); *Lilly v. Sisk*, 1999 WL 370060, *4 (W.D. Va. Apr. 9, 1999) ("[A]ctual and imminent" risk of losing customers to defendants after defendant induced one customer to leave the plaintiff, and made several attempts to solicit other customers, supported a finding of irreparable harm.); *One Stop Deli, Inc. v. Franco's, Inc.*, 1993

7

WL 513298, at *7 (W.D. Va. Dec. 7, 1993) ("[I]rreparable harm may yet be found where the 'present predicament endangers [a business'] relations with customers … [and] the goodwill built up by a heretofore successful enterprise …' such that the damage is 'incalculable – not incalculably great or small, just incalculable.'").

Because Britton managed the Herren's Navy ERP team, and interacted with the Navy ERP clients on behalf of Herren, Britton is intimately familiar with how Herren does business on the Navy ERP project, including sensitive details about Herren's staffing and personnel, pricing, and efforts to re-compete for the Navy ERP project. Because she took with her <u>every single document</u> on her Herren laptop, the Court can assume that she has in her possession the documents she used in supporting Herren's ERP re-compete efforts, documents she used to manage personnel and personnel transitions, and documents she used in efforts to develop other work for Herren. Because she uploaded the information *after* leaving Herren's employ, this Court can also surmise that she took these documents for the purpose of competing with Herren. Today, she interacts on a daily basis with <u>these same clients</u>, in possession of Herren's information but working on her own behalf.

This is exactly the type of situation where preliminary injunctive relief is appropriate to avoid any further harm during the course of litigation. Permitting Britton to work with Herren's clients in possession of Herren's confidential information and without a court order prohibiting her from soliciting additional work from these Navy ERP clients, would provide Britton with a platform from which she could try to siphon off Herren's Navy ERP work little by little. The situation is made even more threatening to Herren since, in her position of advisor to the closed-door Navy ERP transition working groups, Britton has the opportunity to influence Herren's

8

client's decisions behind the scenes. This Court should enter an injunction against Britton to protect Herren from any further irreparable harm to its client relationships.

### C. The Balance of Equities Tips Decidedly in the Plaintiff's Favor, Since An Injunction Will Not Pose any Hardship on Defendant That She Did not Bring On Herself.

Pursuant to her Retention Agreement, Britton was required to return to Herren all of its Proprietary Information, and is prohibited from using that information on behalf of anyone other than Herren. Ex. 2; §2. Britton is also prohibited, during her employment and for one year thereafter, from soliciting Herren's clients and customers. Ex.2, §3(i). Accordingly, Britton has no legal right to solicit Herren's customers or to continue to have access to Herren's information, and thus she will not be unjustly harmed if she is enjoined from doing so. *See Physicians Interactive v. Lathian Sys., Inc*, 2003 WL 23018270 at *5 (E.D.Va., Dec. 5, 2003). Accordingly, Defendant will incur minimal, if any, hardship if this Court enjoins her as requested, and certainly no hardship that is not justified in light of her egregious behavior.

### D. Herren Is Likely to Succeed On the Merits Of Its Claims Against Britton.

#### 1. Counts I and VI: Breach of the Retention Agreement.

Like courts in most jurisdictions, Virginia courts consider three elements in assessing claims for breach of contract: (1) whether there is a valid contract; (2) whether the contract has been breached; and (3) whether the non-breaching party has suffered damages. *Westminster Investing Corp. v. Lamps Unlimited, Inc*., 237 Va. 543, 546, 379 S.E.2d 316, 317 (1989). In Section 2 of the Retention Agreement, Britton agreed to return all Herren property and proprietary information, and not to use or disclose such information except as necessary for the furtherance of Herren's business. Ex. 1, §2.[4] There can be no question that she breached this

---

[4] Section 2 of the Retention Agreement provides, in relevant part:

obligation when she retained Herren's laptop after her termination, uploaded the entire contents of that laptop to her cloud storage, rendered the laptop itself unusable to Herren so that it could access its own information, and ignored repeated requests to return information and provide Herren access to its own laptop. Herren is likely to succeed on its claim for violation of Section 2 of the Retention Agreement. Even if the Retention Agreement did not exist, this Court could properly enjoin Herren from using Herren's documents and information on this evidence. *See Bull v. Logetronics, Inc.*, 323 F. Supp. 115,132-33 (E.D.Va. 1971) ("Even where the contract of employment does not prohibit an employee from engaging in competitive businesses after the termination of his employment, there is a restraint that he may not use 'confidential information or trade secrets obtained from the former employer, appropriating, in effect, to his competitive advantage what rightfully belongs to his employer.'" (quoting *Community Counseling Serv., Inc. v. Reilly*, 317 F.2d 239, 244 (4th Cir. 1963)).

Herren also is likely to succeed in providing that Britton violation Section 3 of the Retention Agreement. Section 3 of the Retention Agreement provides, in relevant part:

> Employee agrees that throughout the period of his employment and for a period of one (1) year following termination of this Agreement, regardless of the reason,

---

> Employee agrees that (i) all Proprietary Information is owned by the Firm and is to be held in trust and solely for the benefit of Herren Associates both during and after the Employee's employment; (ii) the Employee shall not disclose or otherwise reveal such Proprietary Information to any person or entity without the prior written consent of the CEO of the Firm, except as necessary for the performance of the Employee's services for the Firm; (iii) the Employee shall not use such Proprietary Information for his own personal gain or advantage, the gain or advantage of others, or to the detriment of the Firm; and (iv) upon the termination of his employment, for any reason, the Employee shall promptly return to the Firm all such Proprietary Information and shall continue to abide by the confidentiality provisions of this Agreement.
>
> For purposes of this Agreement, "Proprietary Information" shall include, but is not limited to, information that is not readily available to the public, and which the Firm's operations, financial results, plans and compensation structure (other than to qualify Herren Associates for a specific client assignment), strategies, knowledge on-line database, clients, or any other subject matter pertaining to the business of the Firm or its clients.

10

> that he shall not, without the Firm's prior written consent, (i) solicit or attempt to secure, either directly or indirectly, the Firm's clients or customers other than for the Firm's sole benefit, which shall include individuals, business entities and government agencies for whom the Employee rendered consulting services during his employment with the Firm or clients whom the Employee, either directly or indirectly, individually or together with other Herren Associates employees, actively solicited within one (1) year of termination contract employment; . . .

Def. Ex. 11, §3(i). Under this provision, there are two classes of persons ("individuals, business entities and government agencies") whom Britton is prohibited from soliciting "other than for the Firm's sole benefit": (1) clients she serviced (those for whom she "rendered consulting services during [her] employment with the firm") and (2) clients she solicited within the last year of her employment (those whom she "actively solicited within one (1) year of termination contract employment"). In this case, Britton's conduct constitutes a breach of both provisions. Britton provided facilitation services to NAVSUP Mechanicsburg, along with the other Navy ERP entities participating in the transition workgroups. And, Britton solicited work for transition services from NAVSUP Mechanicsburg during her last year of her employment, solicitation which *should have been* on behalf of Herren.

In Virginia, courts consider the following factors when assessing the enforceability of post-employment restrictions such as these: (1) is the restraint no greater than necessary to protect the employer in its legitimate business interests; (2) is the restraint unduly harsh and oppressive in curtailing the employee's legitimate efforts to earn a livelihood; and (3) is the restraint reasonable from a public policy standpoint. *Blue Ridge Anesthesia & Critical Care, Inc. v. Gidick,* 239 Va. 369, 371-72, 389 S.E.2d 467, 469 (Va. 1990); *Foti v. Cook*, 220 Va. 800, 805, 263 S.E.2d 430, 433 (1980). Although courts tend to examine full-scale non-competition agreements closely, covenants that permit lawful competition but that merely prohibit the solicitation of clients are not controversial. These restrictions are clearly enforceable. The prohibition on solicitation lasts

only for one year. It is narrowly tailored to apply only to those clients that Britton herself served or solicited, and because it does not restrict otherwise lawful competition, it cannot be unduly harsh or oppressive on the employee's legitimate efforts to earn a living.

### 2. Count III: Britton Plainly Breached Her Fiduciary Duty to Herren.

Herren is also entitled to preliminary injunctive relief because it is likely to succeed in proving that Britton breached her fiduciary duty to Herren by soliciting Herren's client and usurping a corporate opportunity during her Herren employment. Employees are agents of their employers and, under common law rules of agency, owe a fiduciary duty of loyalty their employers. The duty of loyalty is broad and includes the duties of obedience, confidentiality and loyalty. Restatement (Second) of Agency, § 387 (1958). Liability for breach of fiduciary duty has been imposed where employees or directors misused confidential information, and solicited an employer's clients prior to termination of employment. *See, e.g., PM Services Co. v. Odoi Associates, Inc*., 2006 WL 20382, at *29 (D.D.C. Jan. 4, 2006) ("It is clear that when an employee misappropriates a firm's confidential information and/or proprietary advantage for his own personal advantage, the employee has breached his duty of loyalty to his employer."); *Furash & Co. v. McClave*, 130 F. Supp.2d 48, 53 (D.D.C. 2001) ("In preparing to compete, an employee may not commit wrongful acts, 'such as misuse of confidential information, solicitation of the firm's customers, or solicitation leading to a mass resignation of the firm's employees.'") (citation omitted); *Feddeman & Company, C.P.A., P.C. v. Langan Associates, P.C., et al*., 260 Va. 35, 43-44, 530 S.E.2d 668, 673 (2000) (where employee defendants formulated plan to resign en masse, and told other employees they could come too, "the totality of the defendants' actions provided credible evidence to support a jury determination that their

conduct fell below the required standard of good faith and loyalty and constituted a breach of fiduciary duty.").

This fiduciary duty is particularly high among individuals, like Britton, hired to interact with their employer's clients on the employer's behalf or develop business opportunities with existing and prospective clients for their employers. The Fourth Circuit has held:

> Employment as a sales representative demands of the employee the highest duty of loyalty. It is not without its difficulties when the employment continues after the employee has arrived at a fixed determination to leave his employment, for then his interests and those of his employer have lost their identity and may have become conflicting. Until the employment relationship is finally severed however, the employee must prefer the interests of his employer to his own. During such a period, he cannot solicit for himself future business which his employment requires him to solicit for his employer. If prospective customers undertake the opening of negotiations which the employee could not initiate, he must decline to participate in them. Above all, he should be candid with his employer and should withhold no information which would be useful to the employer in the protection and promotion of its interests.

*Community Counseling Serv., Inc. v. Reilly*, 317 F.2d 239, 244 (4th Cir. 1963). Because Herren will be able to show that Britton did *not* prefer the interests of her employer during her Herren employment, but instead successfully solicited the opportunity for herself, Herren has demonstrated a likelihood of success on Count III.

### 3. Counts IV & VII: Defendant's Conduct Constitutes Tortious Interference with Herren's Contractual Relationships & Prospective Business Relationships.

In Virginia, the elements required for a *prima facie* showing of tortious interference with business relations are: (1) the existence of a valid contractual relationship or prospective business relationship; (2) knowledge of the relationship or prospective business relationship on the part of the interfering party; (3) intentional interference inducing or causing a breach or

termination of the relationship or loss of the prospective business relationship; and (4) resultant damage to the party whose relationship or prospective business relationship has been disrupted. *Rappahannock Pistol and Rifle Club v. Bennett*, 262 Va. 5, 12, 546 S.E.2d 440, 443 (2001) (*citing Chaves v. Johnson*, 230 Va. 112, 335 S.E.2d 97 (1985). In the case of business expectancies, the plaintiff must also show that the interference was accomplished by "improper methods." *Duggin v. Adams*, 234 Va. 221, 226-27, 360 S.E.2d 832, 836 (1987). All of these elements are plainly present in the instant case.

Herren is also likely to succeed on its tortious interference claims. Britton was performing facilitation work for the Navy ERP transition while a Herren employee. She learned of an opportunity to continue that work during her Herren employment. Instead of bringing that opportunity to Herren, she took it for herself. Britton has *admitted* that Maga Design would have subcontracted to Herren had she not improperly interfered with that opportunity. Britton's methods were certainly improper in that the involved breaches of confidentiality, breaches of fiduciary duty, and breach of non-solicitation clause. *See Duggin*, 234 Va. at 227, 360 S.E.2d at 836 ("Methods of interference considered improper are those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules.").

E. **Injunctive Relief is in the Public Interest**.

There is a strong interest in maintaining the *status quo ante litem* until the merits of a serious controversy can be fully considered by a trial court. *See The Seniors Coalition, Inc. v. The Seniors Foundation, Inc.*, 1996 WL 1065556, *5 (Va. Cir. Ct. June 10, 1996). In *One Stop Deli, Inc.*, 1993 WL 513298 at *8 the Court granted an injunction, observing that "[t]he public interest in this case obviously aims at striking a balance between vigorous, creative competition

and basic conceptions of fairness[, but w]here fairness has been compromised too much, the public interest is served by an injunction that prevents further deterioration of the status quo."

In this case, the narrow injunctive relief requested will preserve the *status quo* by preventing Britton from any further use of Herren's information and returning that information to Herren promptly. Perhaps more importantly, the proposed narrow injunction will safeguard any further damage to Herren's client relationships by prohibiting her from using her ill-gotten position of trust with the Navy ERP transition team to solicit new or further work with Herren's clients in violation of her Retention Agreement.

## IV.     CONCLUSION

For all the foregoing reasons, Herren respectfully requests that this Court grant its Motion for Preliminary Injunction and enter the attached order.

Respectfully submitted,

_____/s/_____
Susanne Harris Carnell, VSB #41521
Michael J. Lorenger, VSB #38910
LORENGER & CARNELL PLC
651 South Washington Street
Alexandria, VA  22314
Phone:  (703) 684-1804
Facsimile: (703) 684-1805
scarnell@lorengercarnell.com

Counsel for Plaintiff J.L. Herren & Associates, P.C.

December 6, 2013