IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| J. L. HERREN & ASSOCIATES, P.C., | ) |
| Plaintiff, | ) |
| v. | ) CA No. 1: 13-cv-1314 (LMB/IDD) |
| MELISSA BRITTON | ) |
| Defendant. | ) |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION FOR ENTRY OF
PRELIMINARY INJUNCTION ORDER**

Plaintiff seeks the entry of the attached narrowly tailored Order, requiring Defendant Melissa Britton to return and not to use Herren's proprietary information and requiring her to submit her Computer Equipment to forensic inspection by a neutral expert so that the parties and this Court will have the benefit of an impartial expert analysis of what information Defendant took, and what she did with it.

**I.     The Proposed Order Complies With the Court's December 13th Order.**

On December 13, 2013, the parties appeared before the Court at a hearing on Plaintiff's Motion for Preliminary Injunction seeking a two part injunction of Defendant. In support of its Motion, Plaintiff offered evidence that Britton had taken the entire contents of her Herren-issued laptop, and rendered the laptop unusable prior to returning it. During the hearing, the Court agreed that the entry of a restraining Order regarding information on the laptop was appropriate, stating:

> . . . I'm denying the motion for a preliminary injunction to the extent you're asking the Court to restrain the defendant from trying to get work, all right? She's got a right to do that. You can always if she does get another contract that you

Case 1:13-cv-01314-LMB-IDD   Document 42   Filed 01/03/14   Page 2 of 9 PageID# 623

> could show you would otherwise have gotten, damages down the road you can face; but the information on the laptop is a real problem for the defense; and that's got to be resolved; and so I am – I will enter a restraining order to that extent; but I want you, both sides, to try to work out the language of that, all right? That's my ruling, thank you.

Exhibit A, Transcript 20:16-21:1.  The court directed the parties to negotiate in good faith to develop a stipulated Order to be signed by the Court.   Despite counsel's negotiations, both by phone and through correspondence, the parties have been unable to reach agreement.   Among other issues, Defendant has been unwilling to include any requirement that she return Herren's proprietary information or any requirement that she permit an inspection of anything other than that narrow universe of whatever "cloud storage" Huron has already collected.  See Exhibit B (Proposed Order with Defendant's Revisions).[1]   Defendant's refusal to permit expert inspection of equipment and media to which she may have transferred Herren information does not satisfy this Court's instruction to the parties:

> I think you should – both sides should think collectively about an order that you can submit to the Court for my signature putting restrictions and restraints on the way in which any of the information that's in the cloud *or that has been transferred from the cloud to some other medium* is accessed by the defendant. She does not have a right to use the plaintiff's proprietary information . . .

Ex. A, Transcript 18:25-19:6 (emphasis added).

The Court plainly contemplated that the neutral expert would evaluate Defendant's computer information, determine what had happened to Herren's proprietary information and ensure that relevant information be returned to Herren.  See id. at 12:5-24 (describing procedure of having neutral expert evaluate whether there "has been any access to this file, if there has been, what was done, what was transferred out, and then B, to evaluate it with the parameters

---

[1]    It is not at all clear what Huron captured when it took a forensic image of Ms. Britton's cloud storage.   The declarations submitted in response to Plaintiff's Motion for Preliminary Injunction and the representations of counsel have suggested that Huron captured only the "temp to lissa" folder, and nothing else.

2

that you would give him.") This Court recognized that the neutral expert would be in an appropriate position to determine what was "purely private" such as personal tax returns that could be "taken out," as opposed to "anything dealing with Herren, obviously, or possibly with negotiations with Maga or with the Navy sufficiently relevant to the issue in this case, to be turned over." Id. This is what Plaintiff's Proposed Order seeks. Accordingly, because it complies with the Court's specific direction on December 13th, Plaintiff respectfully requests entry of the attached Order.

## II. Entry of the Order Is Further Warranted Given the New Evidence of Spoliation and Concealment.

Defendant will likely assert that Plaintiff's Proposed Order goes beyond the Court's written Order issued on the day of the hearing. See Exhibit C (Order of December 13th) (directing the parties to confer in good faith to draft an order for submission to the Court regarding "access to the information uploaded to defendant's cloud storage").[2] It does not; Plaintiff's proposed Order comports with the Transcript and the Order. But, in any event, the proposed Order is warranted by the facts and circumstances, and should be entered to protect Herren's confidential and proprietary information from further use, disclosure and/or destruction and spoliation.[3]

In opposing Plaintiff's Motion for Preliminary Injunction, Britton represented to this Court that the entirety of her Herren laptop had been uploaded to one particular folder on her Google cloud drive, the "temp to lissa" folder, that she had returned the entirety of that folder to

---

[2]   Defendant has taken the position that an appropriate Order should deal only with the contents of the defendant's cloud storage as it existed on October 31st, the day Huron captured its contents forensically. Defendant's interpretation reads the Order too narrowly since it would not address Defendant's access to the *information* that had been uploaded to the cloud, as opposed to her access to the cloud storage itself.

[3]   Plaintiff incorporates by reference the evidence and arguments set out in its Motion for Preliminary Injunction and Memorandum in Support thereof.

3

Herren, but for two personal legal files, and that she had not accessed it since uploading it on July 20, 2013. Britton's assertions of innocence have proven false. A review of the laptop she returned, after rendering it unusable, has revealed that Britton stole a vast amount of Herren information that has not been returned, the existence of which Britton has <u>concealed</u> from this Court, and the evidence of which she attempted to destroy.

      A.      <u>Britton Has Not Been Truthful About Her Uploading or Return of Herren Information</u>.

In opposition to Plaintiff's Motion for Preliminary Injunction, Britton declared, under oath, that: "On Saturday, July 20, 2013, I uploaded the contents of my company-issued laptop to my GoogleDrive cloud storage. I named the folder 'temp to lissa.'" <u>See</u> Declaration of Melissa Britton, December 11, 2013, attached as Exhibit A to Defendant's Opposition to Plaintiff's Motion for Preliminary Injunction.[4]

In fact, a forensic evaluation of the laptop she wiped and then returned ("IT001" or her "Herren laptop") and comparison with the hard drive her counsel returned on December 10, 2013 ("IT002" or "temp to lissa drive")[5] reveals that Britton's representation to this Court was not truthful. <u>See</u> Exhibit E, Declaration of J. Christopher Racich, and attachments.

---

[4]    Counsel for Defendant confirmed that representation to the Court in Defendant's Brief, Opp. at 4, at the hearing, during the following question and answer:

    The Court: All right. But as I understand it, they've got the laptop, and you're saying that they have now access to whatever was in the laptop.

    Mr. Wayne: That's my understanding.

Ex. A, Transcript at 10: 6-9; <u>see also</u> <u>id</u>. ("We have given them on – we have given them on a disk everything that we believe relates to Herren.")

[5]    A copy of the letter sent by counsel enclosing Britton's "temp to lissa drive" is attached hereto as Exhibit D.

Although Britton's Herren laptop did include a directory named "temp to lissa" until July 20, 2013 (a directory containing 6100 files and 12.5 GB of data), it is not true that everything in the "temp to lissa" directory (save two legal files) was returned to Herren by counsel. See Racich Dec. ¶6; Racich Ex. 1.  The file names highlighted on Racich Exhibit 1 reflect files that were included in the "temp to lissa" directory on IT001, Britton's Herren laptop, prior to its destruction, that were not returned to Herren on IT002, the "temp to lissa" drive. Id. ¶¶6, 9.

It is also not true that everything on Britton's Herren laptop was uploaded to that "temp to lissa" directory.  It was not.  For example, Britton's Herren laptop included additional data in her user profile, including some 39,000 files, much of which was also not revealed to Herren or returned on IT002, the "temp to lissa" drive.  Racich Dec. ¶8; Racich Ex. 3.

Even more startling, though, is the fact that Britton uploaded a significant quantity of Herren information from her Herren laptop to a different Google Drive folder, and concealed that fact from the Court.  Although Britton testified under oath that she uploaded the contents of her Herren laptop to the "temp to lissa" folder, she uploaded a vast amount of *other* Herren information to a *second* folder to upload.  As of July 20, 2013, Britton's Herren laptop included a directory titled "temp to ME" (a folder containing at least 2,600 files and at least 18.2 GB of data).  Racich Dec. ¶7.  On or before July 20, 2013, the contents of this "temp to ME" directory had been uploaded to one of Britton's Google Drive accounts, and then was deleted from her Herren laptop.  Racich Dec. ¶14.  There can be no question that the information in the "temp to ME" folder is Herren information – a vast amount of the documents are included in a folder titled "Old Herren Work."  Racich Dec. Ex. 2.   The existence of the "temp to ME" folder has never been disclosed to Herren by Britton, and the contents of the "temp to ME" directory, which

5

was <u>not</u> included on IT002 (the "temp to lissa" drive), has <u>never</u> been returned to Herren.[6]  In this "temp to ME" directory, Britton has stolen years' worth of Herren work product from her Herren laptop for her new company "ME," or Mission Effect, retained secret possession of these documents during the course of this litigation, and has taken significant steps to conceal that fact, including destroying evidence and offering false testimony to this Court.

        B.      <u>Britton Took Significant Steps to Destroy Evidence of Her Theft</u>.

Although counsel for Defendant has represented that she did not engage in spoliation of evidence or destroy any information, Transcript at 11: 11-18, that is simply not true.  Not only did Britton lock the laptop she returned with a password designed not to be opened, she went to great lengths to <u>destroy</u> the information on the laptop before locking and returning it.  On July 20, 2013, prior to wiping the hard drive and locking it, Britton ran several Google searches on how to destroy the data on her Herren laptop including, for example searches for:

- "wipe hard drive"
- "virus that wipes hard drive"
- "download virus that wipes hard drive" and
- "How to reset a hard drive then fill the disk."

Racich Dec. ¶17; Ex. 8.  Her searches were successful, and Britton downloaded and installed both "PCRegistry Cleaner" and "Erase Your Hard Drive," during the evening of July 20, 2013.  <u>Id</u>. ¶19; Racich Ex. 9.  Then, to complete the destruction, Britton reinstalled Windows on the laptop.  <u>Id</u>. ¶20.  By all of these steps, Britton ensured that Herren would not have access to its proprietary information.  Even with a forensic evaluation, Herren has been able to obtain only

---

[6]    There were only 32 user- created files from the "temp to ME" directory with names similar to files returned to Herren on the "temp to lissa" drive.  Racich Dec. ¶9(c); Racich Ex. 4.

identifying information about these files from their metadata; the content of the data in these directories was overwritten. Racich Dec. ¶¶6-8.

  C. <u>This Order Is Necessary To Ensure The Return of Herren's Information to Herren, and Will Not Prejudice Britton In Any Way.</u>

Britton has previously taken the position that the proposed Order is unnecessary because she has returned all Herren information, which she plainly has not, but also because a forensic review of her cloud storage alone should be sufficient. A review of the cloud storage captured by Huron, as proposed by Britton, would do <u>nothing</u> to ensure that Herren's proprietary information has been returned, and would <u>not</u> provide evidence that the information on that cloud storage had not been accessed or transferred.

As shown above, Britton has taken significant steps to conceal from Herren and this Court the existence of a large volume of data stolen from her Herren laptop that was apparently <u>not</u> captured by Huron. Thus, an examination of the cloud storage captured by Huron would be ineffective in evaluating what Britton took and what she did with the information. Moreover, an evaluation of the cloud storage itself would not even provide evidence that the information *in the cloud storage* had not been accessed or transferred. Racich Dec. ¶¶10-12. This is so because the "Last Written" date of a file is <u>not</u> updated when a file is downloaded, opened or accessed through the internet. <u>Id</u>. ¶11. The most effective way to determine what information Britton took and what she did with it would be to examine the media and devices used by Britton to connect to her Google Drive accounts. <u>Id</u>. ¶12.

Defendant cannot claim to be prejudiced by the proposed Order since she has taken the position that she would be "willing to give [Herren] access to everything if it comes to that." Transcript 12:3-4; <u>see also</u> <u>id</u>. at 13:5-6. Now, in light of Britton's deception, it has indeed come to that.

7

For all the above reasons, Herren respectfully requests that the Court enter the attached proposed Order requiring that Britton return all of Herren's information to Herren, and to submit her computer equipment for inspection and evaluation by a neutral forensic expert.

Respectfully submitted,

_____/s/_____
Susanne Harris Carnell, VSB #41521
Michael J. Lorenger, VSB #38910
LORENGER & CARNELL PLC
651 South Washington Street
Alexandria, VA  22314
Phone:  (703) 684-1804
Facsimile: (703) 684-1805
scarnell@lorengercarnell.com

*Counsel for Plaintiff, J. L. Herren & Associates, P.C.*

January 3, 2014

## CERTIFICATE OF SERVICE

I certify that on the 3rd day of January 2014, I will file the foregoing Memorandum in Support of Motion for Entry of Preliminary Injunction Order, and Exhibits, with the Clerk of the Court using the Court's CM/ECF system, which will then send a notification of such filing (NEF) to the following:

> Charles B. Wayne (VSB # 24954)
> Victoria A. Bruno
> DLA Piper LLP (US)
> 500 8th Street, N.W.
> Washington, D.C. 20004
> (202) 799-4253
> (202) 799-5253 (fax)
> charles.wayne@dlapiper.com
> victoria.bruno@dlapiper.com
>
> *Counsel for Defendant*

                                                         /s/
                                Susanne Harris Carnell, VSB #41521
                                Lorenger & Carnell PLC
                                651 South Washington Street
                                Alexandria, VA 22314
                                Phone: (703) 684-1804
                                Fax:    (703) 684-1805
                                scarnell@lorengercarnell.com

                                *Counsel for Plaintiff*