UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| J. L. HERREN & ASSOCIATES, P.C., | . | Civil Action No. 1:13cv1314 |
| | . | |
| Plaintiff, | . | |
| | . | |
| vs. | . | Alexandria, Virginia |
| | . | January 10, 2014 |
| MELISSA BRITTON, | . | 10:56 a.m. |
| | . | |
| Defendant. | . | |
| | . | |

. . . . . . . . . . . . .

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE LEONIE M. BRINKEMA
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFF:          SUSANNE HARRIS CARNELL, ESQ.
                            Lorenger & Carnell PLC
                            651 South Washington Street
                            Alexandria, VA 22314


FOR THE DEFENDANT:          CHARLES B. WAYNE, ESQ.
                            VICTORIA A. BRUNO, ESQ.
                            DLA Piper US LLP
                            500 Eighth Street, N.W.
                            Washington, D.C. 20004


FOR MAGA DESIGN GROUP, INC.:  RUSSELL J. GASPAR, ESQ.
                            Cohen Mohr, LLP
                            1055 Thomas Jefferson St., N.W.
                            Suite 504
                            Washington, D.C. 20007


ALSO PRESENT:               MELISSA BRITTON
                            JEFFREY L. HERREN
                            JEFFREY M. VOTH

(Pages 1 - 32)

COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

1    OFFICIAL COURT REPORTER:          ANNELIESE J. THOMSON, RDR, CRR
                                       U.S. District Court, Fifth Floor
2                                      401 Courthouse Square
                                       Alexandria, VA 22314
3                                      (703)299-8595

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1                    P R O C E E D I N G S

2          THE CLERK:  Civil Action 13-1314, J. L. Herren &

3    Associates, P.C. v. Melissa Britton.  Would counsel please note

4    their appearances for the record.

5          MS. CARNELL:  Good morning, Your Honor.  Susan

6    Carnell on behalf of the plaintiff in this matter.

7          THE COURT:  Good morning.

8          MR. WAYNE:  Good morning, Your Honor.  Charles Wayne

9    on behalf of the defendant, Melissa Britton, who is here with

10   me, as is my colleague, Victoria Bruno.

11         THE COURT:  Good morning.

12         And for the potential intervenor?

13         MR. GASPAR:  Yes, good morning, Your Honor.  Russell

14   Gaspar for potential intervenor Maga Design.

15         THE COURT:  All right.

16         MS. CARNELL:  Your Honor, I should have noted that my

17   client -- Mr. Jeff Voth, my client, and Mr. Jeff Herren are

18   also here with me in the courtroom today.

19         THE COURT:  All right.  Well, unfortunately, this

20   case seems to be getting more difficult; and I'm sorry that

21   that's the case.  I had hoped that you-all would be working

22   together so that there would have been an agreement on the

23   issue about access and evaluation of Ms. Britton's computer;

24   but clearly, there's -- has there been any change in the

25   situation since you-all filed your papers in that respect?

1          I'm sort of addressing right now the motion for the

2     preliminary injunction order.

3          MR. WAYNE:  No, Your Honor, there's been no change in

4     position.

5          THE COURT:  Well, why is there a problem?  I would

6     think -- the last time, Mr. Wayne, you were here, I mean, I

7     thought, quite properly, you admitted that there was a problem

8     with what your client had done with the laptop.  I had expected

9     there would be really -- and I'm pleased at least you've agreed

10    on the expert whom both sides would be satisfied handling this

11    matter; but, you know, the concern that I've got, and maybe you

12    can explain it to me, is this "temp to ME" folder issue which

13    seems to change the landscape as to what your client did with

14    the data.

15         MR. WAYNE:  We're going to produce whatever is in

16    that folder; and that's in the process of being produced, just

17    as we have, we've produced -- I should tell the Court what

18    exactly has been produced.  Everything within the Google cloud

19    storage account except for two privileged documents has been

20    given to the plaintiff.

21         THE COURT:  Now, when you say "privileged documents,"

22    are these attorney-client --

23         MR. WAYNE:  Attorney-client, yes, I'm sorry, e-mails

24    to us.  Everything -- and that includes all Ms. Britton's

25    personal things:  the pictures of the kids, the, you know,

1    papers relating to her divorce proceedings.  Everything has

2    been given.  Nothing has been withheld other than those two

3    privileged documents.

4           Now, with regard to themissioneffect.com account,

5    which we explain in the affidavit she -- it has to do with

6    which domain name she was going to be permitted to use, all

7    documents within that second Google cloud storage account, that

8    is, themissioneffect.com account, will be produced -- we're in

9    the process of preparing it.  We believe it will be produced on

10   Monday, again, the entire contents of it; nothing is going to

11   be withheld.

12          In addition, there are any, any e-mails, the e-mails

13   have to be looked at at least for privilege purposes.  All

14   responsive non-privileged e-mails will be produced from that

15   account.  So we are literally withholding nothing that are in

16   these, that are in these cloud accounts.

17          THE COURT:  This wouldn't have been a -- the problem

18   you've got -- and you know this as a litigator -- there's

19   nothing worse than having a witness or somebody say, "We've

20   given you everything," and then you go into discovery and lo

21   and behold, you find out that that's not accurate.  It's a real

22   problem.  It will be a problem for Ms. Britton down the road if

23   this case goes to trial.

24          It's an issue that always complicates things because

25   now there's a trust issue that's infiltrated the case.  I mean,

1 there's already obviously bad feelings because of the way in

2 which Ms. Britton left and the allegations in the complaint;

3 but it's been aggravated by the fact that there's now a

4 perception that she has not been completely forthright in

5 divulging what, in fact, was uploaded and to where it was

6 uploaded.

7    I mean, I think you've explained in your papers that,

8 you know, she's had some medical and personal issues and forgot

9 to mention this; and that may all be completely true and

10 innocent; but at this point, you know, when parties are at war,

11 as you presently are, it poisons the waters; and it's resulted

12 in this new motion for, you know, further involvement of the

13 Court in setting up some sort of much stricter reporting

14 requirements.

15    MR. WAYNE:  Well, if I could speak to that, Your

16 Honor?

17    THE COURT:  Yeah.

18    MR. WAYNE:  Okay.  That's a different issue than the

19 cloud storage accounts.  The cloud storage accounts really --

20 apart from Your Honor's point that there was a cloud storage

21 account, themissioneffect.com, which was not recalled, in which

22 there -- in any event, whatever is in there, they're getting it

23 on Monday, and they will additionally get if we think it's

24 e-mails that were sent to that account, just as junk e-mails

25 that are sent to everybody's account, but whatever it is,

1    they're getting it.  So that's one issue.

2          The other issue is the laptop that Ms. Britton was

3    issued by Herren and that was in her possession after she was

4    terminated, and there's -- and what these papers are, this

5    motion for preliminary injunction has to do with -- here's

6    what -- Your Honor contemplated this.  You spotted the issue

7    about, as Your Honor has just articulated, with regard to the

8    laptop and with regard to the cloud, the cloud accounts and

9    when they were accessed.  You directed us to try to agree on an

10   expert, which we did.

11         Now, the problem was when the initial order was

12   presented to me by plaintiff's counsel, it included -- Your

13   Honor may recall that you denied the motion for preliminary

14   injunction.  What that order said, started out saying was that

15   the preliminary injunction was granted in part and denied in

16   part, which was inaccurate.  That's where we started this.

17         What this new motion is for preliminary injunction is

18   simply a resurrection of that point that counsel wanted in this

19   order appointing the neutral expert.  Well, they didn't win any

20   portion of the preliminary injunction.  Your Honor denied it.

21         What they want now is instead of having the neutral

22   expert do what their expert has done, and you have, you know, a

23   binder full of documents and his affidavit, that should have

24   been done by the neutral expert, the Court's expert.  Instead,

25   what we have is their expert did it.  That's fine.  Experts

1   disagree on things all the time.

2          We cannot respond.  They, in effect, hijacked the

3   process, and now we're supposed to respond to what their expert

4   has concluded, but we do not have access to the laptop.  So he

5   may be right; he may be wrong.  He may be right in part, wrong

6   in part.  We don't know.  We don't have access to the laptop.

7   It's an entirely different issue than the cloud storage issue.

8   Again, we've produced or are producing everything there.

9          With regard to the laptop, it's impossible for us to

10  respond; and it will be wrong to impose stricter conditions, as

11  Your Honor said, on us based on this laptop analysis when we

12  have not had the chance to look at it.  Again, what was

13  contemplated was the neutral expert would do this, not

14  plaintiff's expert.  So we are, we are at quite a disadvantage

15  here with regard to that.

16         THE COURT:  Well, let me ask you this:  You're not

17  disputing, are you, at this point that the defendant should not

18  use, disclose, or otherwise access plaintiff's proprietary

19  information?

20         MR. WAYNE:  We have no -- we do not object to that,

21  no.

22         THE COURT:  All right.  And are you objecting to the

23  fact that the defendant should promptly return to the plaintiff

24  any and all proprietary information of Herren, including all of

25  defendant Herren's work product?

1          MR. WAYNE:  We do not object to that; and we are in

2     the process of doing that, if we haven't done it already.

3          THE COURT:  All right.  And you've agreed that John

4     Ashley would be appointed as a neutral expert in the field of

5     computer forensics and his fees would be shared equally by the

6     parties.

7          MR. WAYNE:  Correct.

8          THE COURT:  And do you have a problem with promptly

9     producing and making available to the expert at a mutually

10    agreeable place and time within ten days of any order the Court

11    might issue all of the defendant's ESI computer equipment and

12    data compilations?

13         MR. WAYNE:  That we do have a problem with, and

14    here's why.

15         THE COURT:  All right, what is the problem?

16         MR. WAYNE:  Okay.  What Your Honor contemplated at

17    the last hearing was the neutral expert would look at what was

18    uploaded to the cloud, look at the laptop from which it was

19    uploaded, that is, the Herren laptop that's back in Herren's

20    possession, and that's what -- that's the scope of what the

21    expert would do.

22         What Your Honor just read to me is a far broader

23    scope, that's what's proposed by the defendant -- or the

24    plaintiff, excuse me -- that the independent, that the neutral

25    expert will look at all devices, make this analysis, and the

1    cost should be shared.  Why should --

2         THE COURT:  Well, let me ask you this:  Again, I'm

3    not an expert in computer forensics.  Is it your -- and I'll

4    let the plaintiff also respond -- can a computer forensic

5    expert look at that laptop and be able to a reasonable degree

6    of scientific certainty indicate whether anything has been

7    transferred from that laptop to other than the clouds we're

8    talking about?

9         In other words, if the information from the laptop

10   was downloaded to an iPad or to another computer, will he be

11   able to determine that simply from evaluating the laptop?

12        MR. WAYNE:  Their expert says that he has done so.

13        THE COURT:  He has done so.

14        MR. WAYNE:  That he made that conclusion, that a

15   device was attached to the laptop.

16        THE COURT:  And information taken from it.

17        MR. WAYNE:  I don't know if he goes that far, but he

18   says that there was a -- he believes that there was a device

19   like a thumb drive attached to the laptop.

20        THE COURT:  Well, doesn't that open up this can of

21   worms?  And that is, again, this would never have been a

22   problem if your client had not removed the laptop, but she did,

23   and so now the problem is how does the plaintiff have any

24   degree of confidence that using a thumb drive or some other

25   device, your client didn't take the very same information that

1    they're concerned about and put it on some other device so that

2    looking at the clouds that are involved in this case and this

3    laptop would not sufficiently evaluate the universe of

4    information your client has?

5          MR. WAYNE:   I think that's what the neutral expert is

6    for, to make that determination.   Initially, what Your Honor

7    was initially contemplating the last time we were here, the

8    neutral expert would make the evaluation that Your Honor has

9    just stated.   That doesn't mean that the neutral expert would

10   conclude, as their expert did, that a device was attached, for

11   example.

12         THE COURT:   But, you know, in private, when you talk

13   with your client, you should already know whether that has or

14   has not happened.

15         MR. WAYNE:   Well, we do -- exactly.   Our position is

16   that that did not happen.   So we're being -- we're not

17   trying -- we're certainly not being cute with the Court.   We're

18   not withholding anything.   We are -- yes, she did forget,

19   quote, about that Mission -- themissioneffect because of the

20   issue about which domain name she was going to use.   We found

21   out about it through their examination of the laptop.   That's

22   fine.   When we found out about it, we're producing everything

23   from that account.

24         THE COURT:   So you think that the plaintiff's expert

25   has made a mistake in concluding that some other device was

1    plugged into the laptop and downloaded some or all of its data?

2              MR. WAYNE:  I don't -- well, yes.  In the sense that

3    Your Honor is saying, yes, because we are -- I can represent on

4    behalf of my client, as she has represented in her affidavits,

5    that she uploaded it to the cloud and that's what she did.

6    There's no other device; there's no other anything.

7              To the extent that there's a worry about that, that

8    was the purpose of the neutral expert.  So to say that the

9    neutral expert should automatically from moment one have access

10   to all of her devices, whatever they are, is, is taking the job

11   away from the neutral expert.  If he says it looks like a thumb

12   drive was attached, it looks like you did whatever, downloaded

13   it to an iPad or a Dropbox or anything, whatever, yeah, sure,

14   that should be followed.  We agree, that was the point of the

15   neutral expert.

16             But to give the neutral expert the job, the

17   parameters of his job to be based on their expert's analysis,

18   when we haven't had a chance to evaluate it, that doesn't seem

19   fair, and that's what their order does.  It defines the job of

20   the neutral expert through the lens of what their expert has

21   concluded.

22             THE COURT:  Well, all right.  This Mr. Ashley, the

23   one you both agreed to, what is his background?

24             MR. WAYNE:  He's been -- I think both sides are

25   familiar with him.  He's been in the business for as long as

1   there's been such a business.  A Mr. Racich, their expert, used

2   to work for him.  We know of him and have had dealings with

3   him.  Both sides trust him.

4         THE COURT:  I think we should let him make this call

5   as to how far.  In other words, if he agrees with the

6   plaintiff's expert that there's evidence of some further

7   dissemination of this information, then I will be ordering a

8   complete, thorough evaluation, and in addition, you've got a

9   problem with your client then because she's not being honest

10  with you, all right?

11        MR. WAYNE:  I understand.

12        THE COURT:  But I think at this point, if you've both

13  got confidence in that expert, I think having him make that

14  technical call would make this record quite clear, all right?

15        MR. WAYNE:  Yes.

16        THE COURT:  All right.

17        MR. WAYNE:  I have one other electronic discovery

18  issue that I want to bring up to the Court.

19        THE COURT:  All right.

20        MR. WAYNE:  The laptop, when Ms. Britton started her

21  business without significant funds on hand, the laptop that she

22  was using was provided to her by a friend who has a company

23  called Spark, LLC.  So the laptop itself was the property of

24  Spark, LLC.

25        That laptop now, when the CEO of Spark, LLC, who is a

1    friend of Ms. Britton's, learned of this lawsuit and learned

2    that that laptop would be subject to perhaps forensic

3    evaluation, certainly subject to production of documents on the

4    laptop, he retook possession of the laptop.  So he has the

5    laptop.  Spark, LLC, is located in South Carolina.

6              THE COURT:  Does it compete in any respect with the

7    plaintiff?

8              MR. WAYNE:  No, not to my knowledge.  Now, what we

9    are doing is we are in the process of -- apparently, we're not

10   going to get it back by consent, so we are in the process of

11   issuing a subpoena for the laptop, and we will serve and it

12   will go out today, and we will, of course, serve the other

13   side, as now required under Rule 45.  And I don't know whether

14   there will be a fight about that or not.  There shouldn't be.

15             In addition, I should say when we first learned about

16   this, we, A, in writing or obviously urged him to return it,

17   told him that -- basically wrote him what's now called a

18   litigation hold letter that we write to our client -- that

19   everybody writes to his or her client saying that no documents,

20   that nothing -- that he can't touch the laptop, he can't alter

21   it, he can't destroy anything, all the things that we say once

22   a lawsuit starts in the letters that law firms send to their

23   clients.

24             Now, we sent him that letter, and we are hoping that

25   he follows that.  If not, then he'll have to answer to the

1  Court.

2        THE COURT:  Approximately how long was that computer

3  used as part of your client's business?

4        MR. WAYNE:  From July of 2013, when she opened the

5  business, until a week or two ago.  A week ago, I think.

6        THE COURT:  I think the handwriting is on the wall.

7  As soon as that computer is retrieved, it should go to this

8  expert for evaluation.

9        MR. WAYNE:  We agree, Your Honor.

10        THE COURT:  All right.

11        MS. CARNELL:  Your Honor?

12        THE COURT:  Yes.

13        MS. CARNELL:  May I be heard on the preliminary

14  injunction order?

15        THE COURT:  Yes, Ms. Carnell.

16        MS. CARNELL:  As you may have been able to discern

17  from the surprise on my face, the fact that Ms. Britton's

18  Mission Effect laptop has been sequestered in South Carolina is

19  quite shocking news to us indeed.  We have reason to believe

20  Ms. Britton and the CEO of Spark are quite close friends and

21  that that would -- we have reason to believe simply from the

22  information we've learned in the last 45 seconds, reason to

23  believe that it would not have been retrieved but for

24  cooperation with Ms. Britton, but that will -- we will see how

25  that plays out.

1            That is even more reason, Your Honor, I believe, for

2    the Court to enter the order that we've requested today

3    ordering that Ms. Britton produce to John Ashley, who we have

4    agreed on, for inspection and forensic evaluation all of the

5    computer equipment in her possession.  It certainly sounds to

6    me, as it may to the Court, that when they realized that this

7    was possible, that they took that laptop out of the

8    jurisdiction to ensure it would not be subject to such an

9    examination.

10            I have reason to believe based on the information

11   that they produced to me two days ago that that laptop was

12   purchased before July and that she may have, in fact, had that

13   laptop in her possession prior.  I found an invoice on what

14   they produced to me the day before yesterday, and I think that

15   that will, that will play out, but this is quite a shocking

16   development.

17            When we were here in December, Ms. Britton said two

18   substantive things to the Court to oppose our preliminary

19   injunction motion with respect to the confidential information:

20   one, that she had uploaded the contents of her laptop to this

21   "temp to lissa" folder, implying if not outright stating the

22   entire contents, and that she had returned those contents to

23   Herren two days before the hearing on the preliminary

24   injunction motion.

25            Now we learn neither of those representations were

1   true.  She did not upload the entire contents of her laptop to

2   the "temp to lissa" folder.  There were 18 gigabytes of data

3   according to Mr. Racich that were uploaded to the "temp to ME"

4   folder.

5          She did not return the entire contents of the laptop

6   to us.  She did not even return the entire contents of that

7   "temp to lissa" folder.  They say now that they have returned

8   the contents of that "temp to lissa" folder, but we haven't had

9   an opportunity to evaluate to determine whether that was true.

10         They take issue with our having evaluated our own

11  laptop.  As you might recall when we were here on December 13,

12  they had sent us a hard drive with what they contended was

13  returning the contents of the laptop two days before the

14  hearing.  We had not even had an opportunity to messenger it to

15  the expert to look at it practically.  He certainly hadn't had

16  an opportunity to look at it, but -- at all.

17         So what he did was he took the laptop, the laptop

18  that we told you on December 13 -- and they shouldn't express

19  surprise -- we knew it had been wiped, but we didn't know what

20  we could get from it.  She used an Erase Your PC.  She Googled

21  how to, how to kill all of the information.  She reinstalled

22  Windows, which is a painstaking and difficult process, and she

23  comes to the Court today to say, "I don't remember any of

24  that."

25         They now take the position that we were supposed to

1    have waited for an order with respect to a neutral expert and

2    delivered our laptop, the laptop that belongs to Herren, to the

3    neutral expert.  We actually have no objection to having the

4    laptop evaluated by a neutral expert.  We're quite confident

5    that he will reach the same conclusion Mr. Racich did.

6           That was never proposed by Ms. Britton's lawyer, who

7    never proposed that that evaluation be done.  Therefore, we

8    believed it wasn't subject to the Court's order, and we thought

9    the Court's order was we need to look at the information that

10   Ms. Britton took and where else did she put it, and that

11   requires an examination not just of the cloud, as Mr. Racich

12   had testified.  You can't look at the forensic copies of the

13   cloud that were copied by Huron Legal, you cannot look at that

14   and tell what else she did with it.  It's not going to tell us

15   if there is a thumb drive.

16          So even at the outset, they say that they're

17   capturing a second cloud storage.  What they've said in their

18   papers is there's a third cloud storage, and we don't know how

19   many other hard drives, thumb drives are out there, and we've

20   been once bitten and now we're twice shy.

21          I think that if the Court orders that Mr. Ashley

22   conduct an evaluation of Herren's laptop, I think he will come

23   to the conclusion that he needs to evaluate both her cloud

24   storage as well as other areas, but what I don't want to have

25   happen, Your Honor, is to get into this fight yet a third time.

1           There is ample evidence that Ms. Britton has not been

2   honest with the Court, but the Court doesn't even have to reach

3   that conclusion here.  There is compelling, overwhelming

4   evidence that Ms. Britton took Herren's information on the way

5   out the door, has not returned it, gave us a little bit back

6   before the first PI hearing, is trying to give us a little bit

7   back desperately before the second PI hearing, and now claims

8   that she doesn't remember where she put the information.

9           So to ask us to rely on her recollection or her

10  memory or her declarations about what she did with the

11  information would be -- we don't feel like we can rely on that.

12          THE COURT:  All right.

13          MS. CARNELL:  And we ask this Court to enter the

14  order as it stands and order Mr. -- and order Ms. Britton to

15  turn over all of her computer equipment, including the laptop

16  that has now been sequestered in South Carolina in an attempt,

17  it seems, to remove it from the jurisdiction of the Court.

18          Thank you, Your Honor.

19          MR. WAYNE:  Can I be heard, Your Honor?

20          THE COURT:  Yes, sir.

21          MR. WAYNE:  When I was a younger lawyer, I promised

22  myself I'd never do this, but in all my years at the bar, I

23  have never been accused of hiding evidence from the Court, and

24  I resent having to respond to that now.

25          THE COURT:  I don't think there's any accusation that

1   it's counsel.  I certainly have not understood the plaintiff's

2   argument to be that.

3          MR. WAYNE:  She used the pronoun "they," Your Honor.

4          THE COURT:  Well, all right.  But I for the record

5   will say I don't believe the plaintiff is attacking the

6   integrity of counsel in any respect.

7          MS. CARNELL:  Your Honor, I am making no such

8   accusation about the integrity of counsel.

9          THE COURT:  All right.  I don't --

10          MS. CARNELL:  When I refer to "they," I really -- if

11   I used the word "they," in my mind, I was referring to

12   Ms. Britton and her close friend, the CEO of Spark.

13          MR. WAYNE:  With regard to when Ms. Britton got that

14   computer, you asked me how long she'd been using it in the

15   business, and the business started in July, but, in fact, it

16   was in her possession since May, and I want to correct that for

17   the record.

18          THE COURT:  All right.

19          MR. WAYNE:  Okay?  What -- nothing that counsel has

20   said, I think, should affect what the Court's decision is,

21   which is to leave this to Mr. Ashley and not to prejudge it.

22   We are -- I think there's a lot of unfair characterization of

23   what we as lawyers have tried to do in the discovery process,

24   and, in fact, like I said, we have given and by Monday we will

25   have given the entire contents of all the cloud accounts,

1    including personal things that belong to Ms. Britton.  We

2    haven't segregated anything.

3            So I don't think it's fair to say that we somehow

4    have been doling out information in dribs and drabs in the

5    hopes of deceiving both the plaintiff and the Court, and that's

6    what was said here, and that's not fair.

7            We acknowledge, as I did to the Court the first time

8    we were here, we acknowledge that no, of course, she shouldn't

9    have uploaded the information of the laptop.  Of course, she

10   shouldn't have wiped the laptop.  We acknowledge that.  There

11   is no justification for it.  We offered an explanation, but

12   that doesn't cure the problem, as Your Honor knows.

13           Nonetheless, the point of the neutral expert was to

14   minimize the fighting between the parties on this issue.  All

15   we ask is that we return to that, which doesn't just include --

16   and I'm not sure why counsel is surprised that the neutral

17   expert would look at the Herren laptop, the one that was in

18   Ms. Britton's possession.  That was the point, to examine that

19   laptop and to look at the cloud storage.  That's what Your

20   Honor said at the last hearing, and that's what we think the

21   order should say.

22           THE COURT:  But the problem I see here, though, and

23   the argument that I think Ms. Carnell has made is that if the

24   expert agrees with the plaintiff's expert that there is

25   indications that information has been transferred to some other

1   device, then we're in the position of having to come back to

2   court and file another motion for relief.

3          Now, I'm -- as I'm sitting here, I'm thinking of some

4   options.  One option is to grant your request to limit the

5   scope of what he looks at at this point, because at this point,

6   the expenses are being shared.

7          MR. WAYNE:  Correct.

8          THE COURT:  If he finds that there is evidence of

9   further dissemination of this information, then I would impose

10  the additional requirement for the broader range of things that

11  he may search and evaluate but at that point put the entire

12  cost on the defendant, in a sense as somewhat of a sanction for

13  forcing us to go through the second, the second tier.

14         It also puts pressure on a party to put sort of their

15  money where their mouth is, because you appear based upon what

16  your client has told you to be confident that there is not

17  another inaccuracy as to the description of what's been done

18  with this data.

19         Now, you did not have an objection, because I'm

20  working off of the plaintiff's proposed order, you did not have

21  an objection to any of the first three paragraphs recited

22  therein, so the first paragraph of that Court's order would

23  prohibit the defendant from using, disclosing, or otherwise

24  accessing plaintiff's proprietary information such that if, in

25  fact, there is another laptop or some other device where

1   plaintiff's information exists and there becomes evidence of

2   any use of that after today's date, that's contempt of the

3   Court's order, which I think should give the plaintiff

4   sufficient protection in that respect, but not incur for both

5   sides unnecessary costs of Mr. Ashen's -- is it Ashen or

6   Ashley? -- Ashley having to look beyond what is appropriate.

7         How does that sit with the plaintiff?  In other

8   words, I would do a proposed order that has your first, second,

9   and third paragraphs, modify the fourth paragraph to be more

10  consistent with what we've previously said, which would

11  basically be looking at the Herren-issued laptop to determine

12  whether -- basically, it would be, I think, just subsection (a)

13  of that fourth ordered paragraph.  Everything else, I think,

14  would, would run.

15        I'm going to let both of you look at that, but that's

16  sort of my thinking.  And then perhaps add to this proposed

17  order language to the effect that if Mr. Ashley determines from

18  that evaluation that there is evidence of further

19  dissemination, he would then be authorized to do everything

20  else that you have in that paragraph, and you can put in there

21  the South Carolina computer as well, which is really

22  technically not in here, and that the costs of that second tier

23  evaluation would be fully borne by the defendant.

24        MS. CARNELL:  Not being a forensic expert myself, I

25  want to be sure I understand.  If I understand the proposal

1    before I give you my opinion, it is that the order would

2    include the first, second, and third paragraph of my proposed

3    order --

4                THE COURT:  Correct.

5                MS. CARNELL:  -- and essentially would include 4(a)

6    but would add that the expert be asked to evaluate the returned

7    laptop, we'll call it, Britton's returned Herren laptop.

8                THE COURT:  Correct.

9                MS. CARNELL:  And then if in doing that evaluation of

10   the cloud storage captures and the laptop --

11               THE COURT:  And/or.

12               MS. CARNELL:  And/or, some or all.

13               THE COURT:  Right.

14               MS. CARNELL:  If the expert determines that there is

15   evidence of removal of that information to some other place,

16   that then it triggers --

17               THE COURT:  It opens up the universe.

18               MS. CARNELL:  -- the ordering -- it then essentially

19   orders her to disclose the rest of her laptops, drives, and

20   whatever.

21               THE COURT:  Yes.

22               MS. CARNELL:  Although in concept I think that would

23   work, I have a very serious concern with that, and the serious

24   concern is this, and Mr. Racich talks about this in his

25   declaration:  So we have one hardware piece, and we have

1    forensic captures by Huron Legal of one and now maybe two and

2    now maybe three Google clouds.  What our expert found from an

3    evaluation of the wiped laptop -- so we're already working with

4    information that has been attempted to be destroyed in multiple

5    different ways.

6              THE COURT:  Right.

7              MS. CARNELL:  What he can tell from what little

8    information you can still garner from that laptop is that

9    information was put into these directories and uploaded to the

10   cloud, and I don't -- at least two clouds, the "temp to ME" and

11   the "temp to lissa."  We don't know whether it was only put to

12   themissioneffect or Mission Effect or her personal Google cloud

13   storage.

14             If the expert concludes that it went to the Google

15   cloud storage -- and I don't know whether Mr. Racich -- I think

16   he says there was definitely a device attached.  I don't

17   remember where he could identify whether one or more or the

18   like, but if -- let's say the plaintiff's expert -- the

19   plaintiff's expert, excuse me -- the neutral expert concludes

20   that -- let's say he doesn't conclude that there was a device

21   attached, but he concludes that things were clearly uploaded to

22   the Google cloud.

23             You won't be able to tell from reviewing the Google

24   cloud -- he won't be able to tell from reviewing the Google

25   cloud what else was out there, how else she could have

1   downloaded it from the Google cloud, and so just merely that

2   evidence according to Mr. Racich would be evidence that we --

3   you won't be able to evaluate from the forensic copies of the

4   Google cloud storage whether anything was taken back down, that

5   it's just not something you can determine.

6          THE COURT:  You can't determine how the cloud is

7   accessed?  There must be a way of documenting when clouds are

8   accessed.

9          MS. CARNELL:  Well, that's not how I understood his

10  affidavit, and I could point you to the paragraphs, Your Honor.

11  He talks about in -- excuse me, it's Exhibit E, and I believe

12  the paragraphs are 10 to 12, and what I understand from being a

13  layperson is that the forensic review -- and I'm reading from

14  his declaration -- "Forensic review of Ms. Britton's Google

15  Drive account" --

16         THE COURT:  Hold on one second.  Which exhibit?

17         MS. CARNELL:  I'm sorry, it's Exhibit E --

18         THE COURT:  All right.

19         MS. CARNELL:  -- and it is paragraph 12.

20         THE COURT:  All right, hold on.

21         MS. CARNELL:  Let me know when you're ready.

22         THE COURT:  All right, so he's basically saying that

23  you can't look at the cloud itself to see whether or not it's

24  been accessed.  You have to look at the other hardware that the

25  plaintiff might have to see if there's any of the cloud

1    information stored on any of those devices.

2           MS. CARNELL:  That's right, Your Honor.  And we've

3    already made a showing more than sufficient to support a

4    preliminary injunction to permit the Court to require her to

5    already produce it to Mr. Ashley.  She came to the Court

6    saying:  "I only uploaded it in one place."  We provided

7    evidence that she uploaded it in another place that they now

8    are going to get.

9           We know that she's put it in at least two different

10   places, and what -- my concern with your order is it has

11   already been triggered, that we will have a fight over that

12   little nugget of what can you tell, and I think, I think the

13   Court already has evidence that has triggered what you would

14   contemplate as the requirement that she produce all of this

15   computer equipment to the neutral expert; and if he finds

16   nothing, he finds nothing.

17          THE COURT:  All right.

18          MS. CARNELL:  If he finds it, he returns it to us.

19          THE COURT:  And the risk then is we continue to have

20   shared costs, so that's going to be a cost to the plaintiff.

21          MS. CARNELL:  Yes.

22          THE COURT:  I'm going to go ahead and based on this

23   record, I do think that in terms of the need for a preliminary

24   injunction at this point, the plaintiff has met its burden of

25   establishing that there is a strong likelihood of prevailing on

1   this particular issue, that is, the issue that there has not

2   been completely forthright description of where this evidence,

3   this material has been since we now had this new cloud that had

4   not previously been described.

5          I also find that the plaintiff could suffer

6   irreparable harm if there is not a very significant control

7   over the defendant's access to this information, and we need to

8   get this under control promptly, and that the public interest

9   is best served by making sure that there's full accuracy in

10  what is said to the Court in court pleadings and that there is

11  not further misuse of proprietary information.  So I'm going to

12  go ahead and grant your order as proposed.

13         MS. CARNELL:  Thank you, Your Honor.

14         THE COURT:  All right.  Now, that leaves on the --

15  we're sort of doing this backwards, but I think the defendant

16  can see where we're coming from.  The motion to dismiss I have

17  looked at with great care, and I am satisfied that the

18  plaintiff has adequately pled all the necessary elements and

19  the facts supporting those elements to survive a motion to

20  dismiss.  There is sufficient evidence in this complaint to

21  support each of the counts that was at issue in the defendant's

22  motion.

23         Now, obviously, down the road, when there's further

24  discovery, at summary judgment, if there is a summary judgment

25  motion, we can reconsider, but I'm going to deny the motion to

1    dismiss.

2            And the remaining issue is bringing in the new

3    defendant and filing a second amended complaint.  Mr. Gaspar,

4    it's very unusual for a potential defendant to be able to enter

5    into a proceeding to try to preemptively keep from being

6    brought in.  I'm denying your motion to intervene.  I am going

7    to grant the motion to file the second amended complaint.

8            Now, that's not opening the door for the defendants

9    to file a new motion to dismiss unless there's new material --

10   and I don't think there really is any new material as to

11   Ms. Britton.  It's now primarily against Maga.

12           Mr. Gaspar, you will, obviously, have a right if you

13   so choose to file a motion to dismiss, and obviously, I am

14   going to -- to avoid the argument of prejudice, I'm going to

15   vacate the current discovery order, and I will extend the

16   discovery period.  I'm going to give you an additional 60 days,

17   which puts you right back on the normal track, because your

18   client clearly has had knowledge that this was looming on the

19   horizon and I'm sure has been starting to prepare for this.

20           And now having said that, again, you-all are still

21   doing business, is that right, Herren and Maga?

22           MR. GASPAR:  Yes.

23           THE COURT:  And does any of the business that you-all

24   do require security clearances?

25           MR. VOTH:  It does.

1    THE COURT:  I've got to say again, before this case

2  becomes, you know, World War III, you-all need to sit down and

3  try to settle this.  I mean, I had suggested that before, but,

4  I mean, has there been any strong interest in sitting down with

5  Judge Davis, the magistrate judge assigned, or your hiring an

6  outside mediator to try to resolve this dispute?

7    MR. GASPAR:  Your Honor, Ms. Carnell and I have had

8  several discussions in the last two weeks to explore possible

9  resolutions of this matter.  During the course of those

10  conversations, I've advised her that should Maga be made a

11  party or even if Maga weren't a party, Maga would be prepared

12  to participate in a settlement conference with a magistrate

13  judge.

14    THE COURT:  All right.  Well, I strongly recommend

15  that be done as quickly as possible.  I mean, again, you have

16  an ongoing business relationship.  You're dealing with the U.S.

17  government.  You've got security clearance issues.  I don't

18  know how much, if any, dirt may get, you know, resurrected in

19  this litigation, but the government doesn't like litigation,

20  and when it sees its contractors suing each other and suing

21  each other with, you know, claims of, you know, breach of

22  agreements and that sort of thing, it could jeopardize

23  everybody's dealings with the government.

24    So I think, you know, it behooves wise counsel -- and

25  I have good counsel in this courtroom -- to try to sit down and

1   see if this thing can get worked out.  I can imagine some

2   creative business ways in which it could be, and I would hope

3   that you would seriously look at that before a great deal of

4   time and money and energy is spent in litigation.

5          MR. GASPAR:  The -- I'm sorry, Your Honor.

6          THE COURT:  Yeah, go ahead.

7          MR. GASPAR:  I was just going to remark that

8   Ms. Carnell and I have begun to explore some of those concepts.

9   The exploration hasn't yet borne fruit, but I hope that we'll

10  be able to continue them.

11         THE COURT:  Very good.  Well, anything we can do to

12  help you in that respect, you can call chambers, and we'll see

13  what we can do to help you, all right?

14         But in any case, I think that resolves all the

15  motions that were pending in this case, and we'll recess court

16  until 1:00.

17         MR. GASPAR:  Excuse me, Your Honor.

18         THE COURT:  Yeah.

19         MR. GASPAR:  One final question:  Will I -- will Maga

20  have the normal 21 days to respond to the second amended

21  complaint?

22         THE COURT:  Are you accepting service today?

23         MR. GASPAR:  Yes.

24         THE COURT:  You are?  Yes, 21 days.

25         All right, anything further?

1          MS. CARNELL:  No, Your Honor.

2          THE COURT:  All right, we'll recess court until 1:00.

3                    (Which were all the proceedings

4                     had at this time.)

5

6                CERTIFICATE OF THE REPORTER

7     I certify that the foregoing is a correct transcript of

8  the record of proceedings in the above-entitled matter.

9

10

11                              _____
                                         /s/
12                                Anneliese J. Thomson

13

14

15

16

17

18

19

20

21

22

23

24

25