## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

|  |  |
|---|---|
| **J. L. HERREN & ASSOCIATES, P.C.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CA No. 1: 13-cv-1314 (LMB/IDD)** |
| ) | |
| **MELISSA BRITTON** ) | |
| ) | |
| **and** ) | |
| ) | |
| **MISSION EFFECT, LLC** ) | |
| ) | |
| **and** ) | |
| ) | |
| **MAGA DESIGN GROUP, INC.** ) | |
| ) | |
| **and** ) | |
| ) | |
| **SPARC, LLC** ) | |
| ) | |
| **and** ) | |
| ) | |
| **ERIC B. BOWMAN, individually,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## THIRD AMENDED COMPLAINT

Plaintiff, J.L. Herren & Associates, P.C. , by and through undersigned counsel, brings this Third Amended Complaint against its former employee, Melissa Britton, and her newly formed company, Mission Effect, LLC, to enjoin her ongoing unlawful conduct and to recover damages arising from her unlawful scheme to divert a corporate opportunity away from her employer to benefit herself and her newly formed company.  Plaintiff also brings this Third Amended Complaint against Maga Design Group for breach of contract, conspiracy, aiding and abetting the breach of fiduciary duty

and tortious interference with a business expectancy.  Plaintiff also brings this Third

Amended Complaint against SPARC, LLC and Eric B. Bowman, individually, for

conspiracy, aiding and abetting the breach of fiduciary duty, and tortious interference

with a business expectancy.

### Factual Allegations

1.      J.L. Herren & Associates, P.C. ("Herren") is a small business formed in

1989 that provides engineering and management consulting services to government

clients throughout the Washington D.C. metropolitan area.  Herren is a professional

corporation organized under the laws of the Commonwealth of Virginia, with locations in

Virginia, Maryland and Washington, D.C.   Herren regularly does business in Virginia

and has an office in Fairfax County, Virginia.   Herren's headquarters are located in

Washington, D.C.

2.       Melissa Britton is a resident of Ellicott City, Maryland.  Britton was, until

July 16, 2013, an employee of Herren.  Melissa Britton formed Mission Effect LLC in or

about May 2013 for the purpose of competing with Herren.  On information and belief,

Mission Effect is a Maryland limited liability corporation, and is wholly owned by

Britton.

3.      Britton and Herren entered into a Retention Agreement on December 13,

2012 ("Retention Agreement") pursuant to which Britton had certain post-employment

obligations not to solicit clients, not to compete with Herren, not to use Herren's

confidential information and to return Herren's property and information.

4.      The parties elected Virginia law to govern the Retention Agreement, agreed to the "exclusive venue" of, and submitted to personal jurisdiction in, the "state or federal courts located in the Commonwealth of Virginia."  Retention Agreement, ¶7.

5.      Britton was hired by Herren in August 2006 as a Consultant.  She was promoted several times before her termination on July 16, 2013.   At the time of her termination of employment with Herren, Britton was earning an annual salary of nearly $125,000**.**

6.      In Britton's final role with Herren, she served as the Program Manager ("PM") for one of Herren's largest and most important contracts, the contract to provide Support Services to the Navy's Enterprise Resource Planning Program Management Office (Herren's "Navy ERP Contract").

7.      The ERP Program Management Office is an office in Annapolis, Maryland tasked with managing the implementation of a Navy-wide software system, the Navy Enterprise Resource Planning system ("Navy ERP").   Navy ERP is a new business management software system, which provides financial, acquisition and supply management functions to each Navy command, and integrates complex business data into a single system.   As the Navy implements Navy ERP, it has been retiring legacy systems.   Recently, the Navy has begun transitioning from the "implementation" of ERP to the sustainment of the ERP system.

8.      In its role, Herren assists the Program Management Office in managing this extensive software implementation.   Herren, through its team, provides management consulting services to support to the Navy's ERP Program Management Office in the

areas of acquisitions, contracts, business finance management, executive management, public affairs and business operations.

9.      As Herren's PM for the Navy ERP Contract, Britton interacted daily with Herren's client and served as the "face" of Herren to the client.

10.     In the Spring of 2013, the Program Management Office asked Herren to assist it with transitioning from implementation to the sustainment of the ERP program. This included facilitating meetings between personnel in the Navy ERP Program Management Office in Annapolis, and Naval Supply Command ("NAVSUP") Business Systems Center personnel located in Mechanicsburg, Pennsylvania, among others.   As the Program Manager for Herren, Britton assigned herself the task of facilitating these closed door meetings.

11.     During these meetings, which she attended on behalf of Herren as a Herren employee, Britton was introduced to, and became known to, the people in charge of Navy ERP Program Office transition within NAVSUP Business Systems Center Mechanicsburg, where the Navy is forming an office responsible for sustainment of the ERP program.

12.     Maga Design, and its CEO, Scott Williams, were directly involved in these transition meetings, and Britton worked with Maga to support those meetings as part of her Herren employment.

13.     NAVSUP Business Systems Center Mechanicsburg is a client or customer of Herren.  Herren has provided services to NAVSUP Business Systems Center Mechanicsburg through its Navy ERP contract.   For example, in Spring 2013, Herren was providing transition services to NAVPSUP Business Systems Center Mechanicsburg

through the transition services it was performing in the Navy ERP Program Management Office in Annapolis.

14.     In addition to serving Herren's clients as a PM, Britton was also responsible for helping Herren develop additional work with the Navy, including assisting Herren with an upcoming recompete for the Navy's ERP work, as well as more broadly expanding Herren's work among its existing Navy and government clients.

15.     In late April 2013, Britton approached Jeff Voth, Herren's President and her supervisor, to discuss the possibility of teaming with another company in order for Herren to provide its incumbent knowledge regarding the ERP Program Management Office to NAVSUP Business Systems Center Mechanicsburg, which she had learned through her Herren employment, would be gaining work as the program transitioned to the sustainment phase.  In that conversation, Britton specifically suggested that she approach, among other companies, Maga Design, in order to pursue this work for Herren. Voth agreed and asked Britton to follow up on that opportunity as part of her business development obligations.

16.     Britton never followed up with Voth about the possibility of Herren doing new or additional work for NAVSUP Business Systems Center Mechanicsburg to support the transition to sustainment.   It became apparent, in hindsight, that it was because she had decided to usurp that opportunity for herself.

17.     On July 12, 2013, Britton met with Jeff Herren, Herren's founder and Chief Executive Officer, and Jeff Voth, Herren's President, and announced that she had formed her own company, Mission Effect L.L.C., and had arranged to obtain a contract to perform services for the Navy through her own company.

18.     Britton falsely claimed that the services she was providing were not services "in Herren's space."    But when pressed, Britton acknowledged that she would be performing facilitating work and it would be for the Navy in Mechanicsburg, Pennsylvania, specifically for the NAVSUP Business Systems Center Mechanicsburg.

19.     In fact, Britton had solicited and obtained for herself a contract to perform services virtually identical to those she had been performing on Herren's behalf, for a Navy ERP office with whom she had worked closely during her Herren employment.

20.     During that lunch meeting on July 12, Britton also admitted that she had solicited Maga Design, a Herren subcontractor on the Navy ERP Contract, to use Maga Design's prime contract with NAVSUP Business Systems Center Mechanicsburg as a vehicle under which to perform this new work.  Britton described how she had approached Scott Williams, the CEO of Maga Design, and he had told her that the opportunity properly belonged to Herren and that she should be doing the work as a Herren employee.

21.     In that same meeting Britton admitted that she had been working to set up this opportunity "for a while."  In fact, Britton had apparently been developing this work, while performing work for Herren and collecting a Herren salary, since at least May 2013.  Maryland's records reveal that she filed a trade name registration for Mission Effect on May 6, 2013 and she formed Mission Effect LLC on May 8, 2013.

22.     One the very day that Britton announced her plans, Scott Williams, of Maga Design, called Voth and Herren to discuss Maga Design's engagement of Britton.  At the outset of the call, Williams apologized for the situation.  Williams confirmed that he had told Britton to go through Herren because the opportunity properly belonged to

Herren, but that Britton had refused to do so.  Williams told Voth and Herren that it was only after Britton refused to work through Herren that Maga Design had reluctantly agreed to subcontract the work to Britton through her own company, Mission Effect, in order to provide the services requested to the client.

23.     Herren learned from Maga Design that the work Britton was intending to perform for the NAVSUP Business Systems Center Mechanicsburg was virtually identical to that which she had performed for the ERP Program Office in Annapolis on behalf of the transition activities on behalf of NAVSUP Business Systems Center Mechanicsburg while she was a Herren employee.  Williams told Voth and Herren that Britton would be providing transition services to NAVSUP Business Systems Center Mechanicsburg, and helping NAVSUP Business Systems Center Mechanicsburg set up a Program Management Office.

24.     Maga Design, headquartered in Washington D.C., is both a teaming partner of Herren, a client of Herren, a subcontractor to Herren and a prime contractor for Herren.

25.     Herren terminated Britton's employment as a result of her egregious self-dealing and disloyal conduct on July 16, 2013.

26.     Although obligated to do so, Britton did not promptly return to Herren all Herren's property or information.   Then, when Britton finally returned Herren's laptop, Herren discovered that she had rendered the laptop unusable.  Herren has repeatedly requested that Britton provide Herren with the access information and passwords necessary to access the laptop, and Britton ignored those requests.

27.     On July 29, 2013, Herren, through its counsel, sent Britton a letter demanding that she comply with the non-solicit and non-competition covenants contained in the Agreement.  Britton ignored that letter.

28.     A few weeks after she left Herren, Britton returned to work at the Navy ERP Program Management Office, in Annapolis, now working for Mission Effect, as a subcontractor to Maga Design, performing work virtually identical to that which she performed for Herren.   She sits in the same office, and works with the same people, doing essentially the same work, as she did on behalf of Herren.

29.     Herren recently learned that, prior to rendering her laptop unusable and then returning it to Herren, Britton uploaded the entire contents of the computer to her personal cloud storage.

30.     By her conduct, Britton has stolen a corporate opportunity that belonged to Herren, breached her employee duty of loyalty, breached her Retention Agreement, tortiously interfered with Herren's business relations and reasonable business expectancies, conspired with one or more persons to damage Herren in its business, and has damaged Herren's client relationships.

31.     Herren has been, and continues to be irreparably harmed by Britton's unlawful and tortious conduct.

## COUNT I
## Breach of Contract (Section 3) (Against Britton)

32.     Herren incorporates and restates herein the allegations made in Paragraphs 1 through 31.

33.     Herren and Britton entered into a Retention Agreement on December 13, 2013.  The Retention Agreement is a valid and fully enforceable contract.

34.     Herren fulfilled in all material respects its obligations under the Retention Agreement.

35.     The Retention Agreement includes valid and enforceable post-employment restrictive covenants, including Section 3 of the Retention Agreement which provides, in relevant part:

> Employee agrees that throughout the period of his employment and for a period of one (1) year following termination of this Agreement, regardless of the reason, that he shall not, without the Firm's prior written consent, (i) solicit or attempt to secure, either directly or indirectly, the Firm's clients or customers other than for the Firm's sole benefit, which shall include individuals, business entities and government agencies for whom the Employee rendered consulting services during his employment with the Firm or clients whom the Employee, either directly or indirectly, individually or together with other Herren Associates employees, actively solicited within one (1) year of termination contract employment; . . .

Agreement, Section 3(i).

36.     Britton breached her obligations under Section 3 of the Retention Agreement by the conduct described herein, including without limitation by soliciting and attempting to secure business from Herren's clients for whom Britton rendered consulting services during her employment, and soliciting a Herren client who Britton had solicited during the final year of her Herren employment.

37.     As a proximate result of Britton's breach of Section 3 of the Retention

Agreement, Herren has suffered damages.

38.     Unless Britton is enjoined from continuing to violate Section 3 of her

Retention Agreement, Herren will continue to suffer irreparable harm.

## COUNT II
## Breach of Contract (Section 4) (Against Britton)

39.     Herren incorporates and restates herein the allegations made in Paragraphs

1 through 38.

40.     Herren and Britton entered into a Retention Agreement on December 13,

2013.  The Retention Agreement is a valid and fully enforceable contract.

41.     Herren fulfilled in all material respects its obligations under the Retention

Agreement.

42.     The Retention Agreement includes valid and enforceable post-

employment restrictive covenants, including Section 4 of the Retention Agreement which

provides, in relevant part:

> The Employee agrees that through the duration of his employment with the Firm
> and for a period of one (1) year thereafter, regardless of the reason for his
> termination: he shall not, without the prior written consent of the Firm, serve in
> any capacity, job or function (including as a proprietor, partner, officer, director,
> employee, consultant or agent) for any organization or entity that provides
> management consulting services which are competitive with those which, during
> his employment with the Firm, were rendered by the Firm's Federal Sector
> practice serving the U.S. government.  When in such capacity, he could or would
> assist, support or further the entity or organization in competition with the Firm.

Agreement, Section 4.

43.     Britton breached her obligations under Section 4 of the Retention

Agreement by the conduct described herein, including without limitation, by competing

with Herren by providing, in competition with Herren, management consulting services

as an employee of Mission Effect LLC which are competitive with those which she provided  on behalf of Herren to the same clients for which she provided those services on behalf of Herren.

44.     As a proximate result of Britton's breach of Section 4 of the Retention Agreement, Herren has suffered damages.

45.     Unless Britton is enjoined from continuing to violate Section 4 of her Retention Agreement, Herren will continue to suffer irreparable harm.

<u>**COUNT III**</u>
<u>**Breach of Fiduciary Duty (Against Britton**)</u>

46.     Herren incorporates by reference paragraphs 1 - 45 as if fully set forth herein.

47.     Britton owed fiduciary duties to Herren during her employment by Herren.

48.     Britton  breached her fiduciary duties by the conduct described herein, including without limitation:  usurping a corporate opportunity belonging to Herren and taking it for herself,  and soliciting Herren's partners and clients while employed by Herren, all while purportedly working for Herren.

49.     Britton also took steps to compete with Herren before her employment with Herren ended.

50.     As a proximate result of Herren's breaches of her fiduciary duties, Herren has suffered damages.

51.     Britton's conduct was willful and malicious and, accordingly, Herren is entitled to an award of punitive damages.

## COUNT IV
### Tortious Interference with Business Relationships/Expectancies (Against Britton and Mission Effect)

52.     Herren incorporates by reference paragraphs 1 - 51 as if fully set forth herein.

53.     Herren has an ongoing business relationship and expectancy with its client, the Navy.  Herren has a reasonable expectation of continued profitability of this ongoing business relationship.

54.     Britton was aware of the ongoing business relationship between the Navy and Herren, and in fact was charged with identifying ways to expand Herren's work for the Navy, including particularly its work with Navy's ERP Program Management Office and related work.

55.     Despite her knowledge of the existence of this relationship, Britton intentionally interfered with this relationship by the conduct described herein, including but not limited to:  soliciting the Navy to use her, and her newly formed company, Mission Effect LLC, to perform work identical to that which she was performing for the Navy as a Herren employee, soliciting Maga Design to subcontract to her, through her new company, rather than to subcontract to Herren, so that she could perform the work for the Navy, using her Herren position, which gave her access to the knowledge and information necessary to perform this work for the Navy, to enrich herself at the expense of Herren.  Such interference includes interference by improper means and was both intentional and willful as described herein.  Britton acted on her own behalf and on behalf of her company, Mission Effect, in taking each of these actions, and therefore Mission Effect is liable for her conduct as well.

56.     As a proximate result of Britton's and Mission Effect's intentional interference, Herren's business relationship and expectancy with the Navy has been disrupted and lost value.

57.     Herren has suffered, and will continue to suffer, damages as a result of Britton's and Mission Effect's interference with Herren's business relationship with the Navy, including the loss of the business generated from such business relationships and the loss of goodwill.

58.     Britton's and Mission Effect's conduct was willful and done with malicious intent and, accordingly, Herren is entitled to an award of punitive damages.

59.     Britton's and Mission Effect's interference with Herren's business relationship with the Navy  has caused and will continue to cause Herren irreparable injury.

## COUNT V
## Conspiracy to Injure Another In Trade or Business (Against Britton and Mission Effect)

60.     Herren incorporates by reference paragraphs 1 - 59 as if fully set forth herein.

61.     Britton, and through Britton's conduct, Mission Effect, agreed with and acted in concert with one or more other persons, willfully and maliciously to injure Herren in its business, reputation, trade and profession.

62.     Britton, and through Britton's conduct, Mission Effect, agreed with and acted in concert with one or more other persons, to ensure that the Navy engaged Britton, through her own company, Mission Effect, LLC, to provide certain services that rightfully ought to have been provided by Herren using unfair and unlawful means,

including but not limited to Britton's violation of her Retention Agreement, and breach of her fiduciary duties, as described herein.

63.     Britton, and through Britton's conduct, Mission Effect,  engaged in this conduct intentionally, purposefully, and without lawful justification.

64.     Herren has been, and will continue to be, injured in its reputation, trade, and business as a result of the Defendant Britton's and Mission Effect's activities in engaging in this conspiracy.

65.     Herren has suffered damages from this conduct.

66.     Pursuant to Va. Code §18.2-500, Herren is entitled to an injunction, three-fold its damages, punitive damages, and an award of its attorneys' fees and costs.

## COUNT VI
### Breach of Contract (Section 2) (Against Britton)

67.     Herren incorporates and restates herein the allegations made in Paragraphs 1 through 66.

68.     Herren and Britton entered into a Retention Agreement on December 13, 2013.  The Retention Agreement is a valid and fully enforceable contract.

69.     Herren fulfilled in all material respects its obligations under the Retention Agreement.

70.     The Retention Agreement includes valid and enforceable post-employment restrictive covenants, including Section 2 of the Retention Agreement which provides, in relevant part:

> Employee agrees that (i) all Proprietary Information is owned by the Firm and is to be held in trust and solely for the benefit of Herren Associates both during and after the Employee's employment; (ii) the Employee shall not disclose or otherwise reveal such Proprietary Information to any person or entity without the prior written consent of the CEO of the Firm,

except as necessary for the performance of the Employee's services for the Firm; (iii) the Employee shall not use such Proprietary Information for his own personal gain or advantage, the gain or advantage of others, or to the detriment of the Firm; and (iv) upon the termination of his employment, for any reason, the Employee shall promptly return to the Firm all such Proprietary Information and shall continue to abide by the confidentiality provisions of this Agreement.

For purposes of this Agreement, "Proprietary Information" shall include, but is not limited to, information that is not readily available to the public, and which the Firm's operations, financial results, plans and compensation structure (other than to qualify Herren Associates for a specific client assignment), strategies, knowledge on-line database, clients, or any other subject matter pertaining to the business of the Firm or its clients.

Agreement, Section 2.

71.     As Herren's PM on the Navy ERP Contract, Britton had access to Herren's Proprietary Information regarding staffing on that contract, pricing and salary information, as well as information regarding Herren's efforts to bid for other Navy contracts, including the upcoming Navy ERP re-compete.

72.     Britton breached her obligations under Section 2 of the Retention Agreement by the conduct described herein, including without limitation by uploading the entire contents of her work computer to cloud storage that she continued to access after her termination and rendering her laptop unusable prior to returning it to Herren so as to prevent Herren from accessing its own information.

73.     As a proximate result of Britton's breach of Section 2 of the Retention Agreement, Herren has suffered damages.

74.     Unless Britton is enjoined from continuing to violate Section 2 of her Retention Agreement, Herren will continue to suffer irreparable harm.

**COUNT VII**
**Tortious Interference with Business Relationships/Expectancies (Against Britton and Mission Effect)**

75.     Herren incorporates by reference paragraphs 1 - 74 as if fully set forth herein.

76.     Herren has an ongoing business relationship and expectancy with its teaming partner, Maga Design  Herren has a reasonable expectation of continued profitability of this ongoing business relationship.

77.     Britton was aware of the ongoing business relationship between Maga Design and Herren, and in fact was charged with identifying ways to expand Herren's work for Maga Design to support their mutual client, the Navy, including particularly its work on the transitioning of work from the ERP Program office to NAVSUP Business Systems Center Mechanicsburg.

78.     Despite her knowledge of the existence of this relationship, Britton intentionally interfered with this relationship by the conduct described herein, including but not limited to soliciting Maga to use her and her newly formed company, Mission Effect LLC, to perform work identical to that which she was performing as a Herren employee, rather than to subcontract to Herren,  using her Herren position, which gave her access to the knowledge and information necessary to perform this work, to enrich herself at the expense of Herren.  By her conduct, she breached her fiduciary duty to Herren and breached her contractual obligations under her Retention Agreement.  Such interference includes interference by improper means and was both intentional and willful as described herein.  Britton acted on her own behalf and on behalf of her

company, Mission Effect, in taking each of these actions, and therefore Mission Effect is liable for her conduct as well.

79.     As a proximate result of Britton's and Mission Effect's intentional interference, Herren's business relationship and expectancy with Maga Design has been disrupted and lost value.

80.     Herren has suffered, and will continue to suffer, damages as a result of Britton's and Mission Effect's interference with Herren's business relationship with Maga Design, including the loss of the business generated from such business relationships and the loss of goodwill.

81.     Britton's and Mission Effect's conduct was willful and done with malicious intent and, accordingly, Herren is entitled to an award of punitive damages.

82.     Britton's and Mission Effect's interference with Herren's business relationship with Maga Design has caused and will continue to cause Herren irreparable injury.

### COUNT VIII
### Breach of Contract (Against Maga)

83.     Herren incorporates and restates herein the allegations made in Paragraphs 1 through 82.

84.     Herren and Maga Design Group entered into a Subcontract Agreement in February 2009.

85.     The Subcontract Agreement is a valid and fully enforceable contract.

86.     Herren fulfilled in all material respects its obligations under the Subcontract Agreement.

87.     Pursuant to the Section H-9 of the Subcontract Agreement, Maga agreed as follows:

> During the term of this Agreement and for 90 days thereafter, the Subcontractor shall not directly solicit employees of HERREN ASSOCIATES or HERREN ASSOCIATES's Client to undertake employment with it, its parent company, or any subsidiary company.

88.     By and through the actions of its Chief Executive Officer, Scott Williams, Maga has breached the non-solicitation provision of its Subcontract Agreement by soliciting and inducing Britton to leave the employ of Herren and to work for Maga Design through her own company, Mission Effect.

89.     On information and belief, this solicitation of Britton by Maga occurred in the Spring and Summer of 2013 including in person and through email correspondence in April and May 2013.

90.     As a proximate result of Maga's breach of Section H-9 of its Subcontract Agreement, Herren has been damaged.

## COUNT IX
## Conspiracy to Injure Another In Trade or Business (Against Maga)

91.     Herren incorporates by reference paragraphs 1 - 90 as if fully set forth herein.

92.     Maga, through its CEO Scott Williams, agreed with and acted in concert with one or more other persons, including Britton, willfully and maliciously to injure Herren in its business, reputation, trade and profession.

93.     Maga, through Williams, agreed with and acted in concert with one or more other persons, to ensure that the Navy engaged Britton, through her own company, Mission Effect, LLC, to provide certain services that rightfully ought to have been

provided by Herren using unfair and unlawful means, including but not limited to Britton's violation of her Retention Agreement and breach of her fiduciary duties, Maga's violation of its Subcontractor Agreement, and other tortious conduct as described herein.

94.     Maga engaged in this conduct intentionally, purposefully, and without lawful justification.

95.     Herren has been, and will continue to be, injured in its reputation, trade, and business as a result of the Defendant Maga's activities in engaging in this conspiracy.

96.     Herren has suffered damages from this conduct.

97.     Pursuant to Va. Code §18.2-500, Herren is entitled to an injunction, three-fold its damages, punitive damages, and an award of its attorneys' fees and costs.

## COUNT X
### Aiding and Abetting Breach of Fiduciary Duty (Against Maga)

98.     Herren incorporates by reference paragraphs 1 - 97 as if fully set forth herein.

99.     Defendant Britton owed Herren a fiduciary duty of undivided loyalty during her Herren employment.

100.     Defendant Maga knew of Britton's duty of loyalty owed to Herren during her Herren employment.

101.     Britton breached fiduciary duties to Herren by the conduct described above including, soliciting Herren's clients for her own purposes and Maga's purposes during her Herren employment, competing with Herren during her Herren employment and stealing Herren information while in Herren's employment.

102.     Despite Maga's knowledge of Britton's ongoing fiduciary duties owed to Herren, Maga encouraged, induced and enabled Britton's breaches of her fiduciary duties by soliciting NAVSUP BSC Mechanicsburg to provide Britton's services, through her own company and engaging her as a subcontractor to perform work through Maga's prime contract with NAVSUP BSC Mechanicsburg, among other actions.

103.     Herren has been damaged by Maga's conduct in aiding and abetting Britton's breaches of her fiduciary duties to Herren.

## COUNT XI
## Tortious Interference with Business Relationships/Expectancies (Against Maga)

104.     Herren incorporates by reference paragraphs 1 - 103 as if fully set forth herein.

105.     Herren has an ongoing business relationship and expectancy with its client, the Navy.  Herren has a reasonable expectation of continued profitability of this ongoing business relationship.

106.     Maga was aware of the ongoing business relationship between the Navy and Herren, and in fact had been engaged as a teaming partner to work with Herren to identify ways to expand Herren's work for the Navy, including particularly its work with Navy's ERP Program Management Office and related work.

107.     Despite Maga's knowledge of the existence of this relationship, Maga intentionally interfered with this relationship by the conduct described herein, including but not limited to:  soliciting NAVSUP BSC Mechanicsburg,  to use Britton, through her newly formed company, Mission Effect LLC, to perform work identical to that which she was performing for the Navy as a Herren employee, and engaging Britton to perform services for NAVSUP BSC Mechanicsburg in violation of her fiduciary duties and in

20

breach of her contractual obligations.  Such interference includes interference by improper means and was both intentional and willful as described herein.

108.    As a proximate result of Maga's intentional interference, Herren's business relationship and expectancy with the Navy has been disrupted and lost value.

109.    Herren has suffered, and will continue to suffer, damages as a result of Maga's interference with Herren's business relationship with the Navy, including the loss of the business generated from such business relationships and the loss of goodwill.

110.    Maga's conduct was willful and done with malicious intent and, accordingly, Herren is entitled to an award of punitive damages.

111.    Maga's interference with Herren's business relationship with the Navy has caused and will continue to cause Herren irreparable injury.

### COUNT XII
### Federal Computer Fraud and Abuse Act [18 U.S.C. §1030]
### (Defendants Britton and Mission Effect)

112.    Herren incorporations by reference paragraphs 1-111 as if fully set forth herein.  The Herren owned laptop used by Britton while employed by Herren, and then accessed subsequent to her Herren employment, was used in interstate commerce and is thus a "protected computer" under 18 U.S.C. §1030(e)(2)(B).

113.    Once Britton was terminated from her Herren employment, Britton was no longer authorized to access Herren's computer, or any of Herren's proprietary and confidential information on Herren's computer.

114.    Britton did not return her Herren laptop upon the termination of her Herren employment.  Instead, after she had ceased to be a Herren employee, Britton, acting on her own behalf and on behalf of her company Mission Effect, accessed

Herren's information residing on that computer, and copied it onto her cloud storage with the intent to transfer it to her company Mission Effects for use in competing with Herren and soliciting Herren's clients.

115.    Britton, and through Britton's conduct Mission Effect, intentionally accessed Herren's computer without authorization, or in the alternative in excess of her authorization, and, as a result of such access, made unauthorized copies of computer data residing on Herren's computer.

116.    In addition, Britton, and through Britton's conduct Mission Effect, intentionally accessed Herren's computer without authorization, or in excess of her authorization, and intentionally or recklessly caused damage to Herren by removing all Herren data from the laptop that had been provided to her for conducting Herren business, deliberately wiping the laptop of its content, and locking Herren's laptop such that it could not be accessed by Herren personnel.

117.    At the time of her accessing Herren's laptop without authorization, and wiping it of Herren's data, Britton was acting on her own behalf and as agent of Mission Effect.

118.    By the conduct of Britton and Mission Effect in gaining unauthorized access to Herren's laptop and to its proprietary and confidential information contained on that laptop, and by intentionally removing that information and damaging the laptop, Herren has been harmed and has suffered consequential financial losses in excess of $5,000.  In particular, Herren has had to incur significant financial costs to investigate Britton's unlawful access to Herren's laptop and to attempt to restore the data lost and damaged by Britton's conduct.

## COUNT XIII
## Conspiracy to Injure Another In Trade or Business
## (Against SPARC and Bowman)

119.    Herren incorporates by reference paragraphs 1 - 118 as if fully set forth herein.

120.    Defendant SPARC, LLC ("SPARC") is a company duly organized under the laws of the state of South Carolina, with its principal place of business in Charleston, South Carolina.  SPARC provides software design and development products and services to customers in commercial, federal and defense contracting industries. Defendant Eric B. Bowman ("Bowman) is SPARC's Chief Executive Officer.

121.    SPARC, Bowman, Maga and Britton met together in Washington, D.C. on or about June 18, 2013 in furtherance of their conspiracy.

122.    SPARC and Bowman conspired with one or more persons, including Britton, Mission Effect and Maga, to solicit business from NAVSUP BSC Mechanicsburg.

123.    SPARC and Bowman conspired with one or more persons, including Britton and Mission Effect, to steal Herren's confidential and proprietary information, to hide or destroy evidence of Britton's theft of Herren's confidential and proprietary information, and to destroy Herren's property, in furtherance of the conspiracy to injure Herren in its business, reputation, trade and profession.

124.    SPARC and Bowman agreed with and acted in concert with one or more other persons, including Britton, Mission Effect and Maga, willfully and maliciously to injure Herren in its business, reputation, trade and profession.

125.     SPARC and Bowman agreed with and acted in concert with one or more

other persons, to ensure that the Navy engaged Britton, through her own company,

Mission Effect, to provide certain services that rightfully ought to have been provided by

Herren using unfair and unlawful means, including but not limited to Britton's violation

of her Retention Agreement and breach of her fiduciary duties, Maga's violation of its

Subcontractor Agreement, and other tortious conduct as described herein.

126.     SPARC and Bowman engaged in this conduct intentionally, purposefully,

and without lawful justification.

127.     Herren has been, and will continue to be, injured in its reputation, trade,

and business as a result of Defendant SPARC's and Defendant Bowman's activities in

engaging in this conspiracy.

128.     Herren has suffered damages from this conduct.

129.     Pursuant to Va. Code §18.2-500, Herren is entitled to an injunction, three-

fold its damages, punitive damages, and an award of its attorneys' fees and costs.

### COUNT XIV
### Aiding and Abetting Breach of Fiduciary Duty
### (Against SPARC and Bowman)

130.     Herren incorporates by reference paragraphs 1 - 129 as if fully set forth

herein.

131.     On February 13, 2013, Britton e-mailed Bowman to obtain information

technology advice regarding the most untraceable way for Britton to steal Herren

confidential information.  Bowman, and by Bowman's conduct, SPARC  provided

specific advice to Britton to effectuate the taking of Herren's confidential information,

and told Britton to erase the hard drive of her Herren computer before she left Herren's employment.

132.    In or about June 2013, SPARC and Bowman met with Maga, Mission Effect and Britton to discuss their solicitation of NAVSUP including their solicitation to provide services to NAVSUP through Mission Effect, rather than through Herren.

133.    Defendant Britton owed Herren a fiduciary duty of undivided loyalty during her Herren employment.

134.    Defendants SPARC and Bowman knew of Britton's fiduciary duty of loyalty owed to Herren during her Herren employment.

135.    Britton breached fiduciary duties to Herren by the conduct described above including, soliciting Herren's clients for her own purposes and SPARC and Bowman's purposes during her Herren employment, competing with Herren during her Herren employment and stealing Herren information while in Herren's employment.

136.    Despite SPARC and Bowman's knowledge of Britton's ongoing fiduciary duties owed to Herren, SPARC and Bowman participated in, encouraged, induced and enabled Britton's breaches of her fiduciary duties by soliciting NAVSUP BSC Mechanicsburg to obtain services through Britton's own company, by providing Britton advice and assistance with her efforts to untraceably steal Herren information while in Herren's employment and subsequent to her Herren employment, by providing Herren with computer hardware to take, store and use the information she stole from Herren, and by assisting Herren in her efforts to cover up and spoliate evidence of her having taken, stored and used the information she stole from Herren, among other actions.

137.     Herren has been damaged by SPARC and Bowman's conduct in aiding and abetting Britton's breaches of her fiduciary duties to Herren.

**COUNT XV**
**Tortious Interference with Business Relationships/Expectancies**
**(Against SPARC and Bowman)**

138.     Herren incorporates by reference paragraphs 1 - 137 as if fully set forth herein.

139.     Herren has an ongoing business relationship and expectancy with its client, the Navy.  Herren has a reasonable expectation of continued profitability of this ongoing business relationship.

140.     SPARC and Bowman were aware of the ongoing business relationship between the Navy and Herren.

141.     Despite SPARC and Bowman's knowledge of the existence of this relationship, SPARC and Bowman intentionally interfered with this relationship by the conduct described herein, including but not limited to:  soliciting NAVSUP BSC Mechanicsburg,  to use Britton, through her newly formed company, Mission Effect LLC, to perform work identical to that which she was performing for the Navy as a Herren employee.  Such interference includes interference by improper means and was both intentional and willful as described herein.

142.     As a proximate result of SPARC and Bowman' intentional interference, Herren's business relationship and expectancy with the Navy has been disrupted and lost value.

143.     Herren has suffered, and will continue to suffer, damages as a result of SPARC and Britton's interference with Herren's business relationship with the Navy,

including the loss of the business generated from such business relationships and the loss

of goodwill.

144.    SPARC and Bowman's conduct was willful and done with malicious

intent and, accordingly, Herren is entitled to an award of punitive damages.

145.    SPARC and Bowman's interference with Herren's business relationship

with the Navy has caused and will continue to cause Herren irreparable injury.

**Prayer for Relief**

WHEREFORE, Herren prays this Court to enter judgment in its favor and against

Britton and Mission Effect and award it the following relief:

a.      Preliminary and permanent injunctive relief against Britton:

(i)     ordering Britton and Mission Effect to provide a full accounting of all Herren confidential and proprietary information Britton or Mission Effect has had in their possession at any time after July 16, 2013, and ordering that Britton and Mission Effect return to Herren all that remains in their possession;

(ii)    ordering Britton to provide passwords and/or access information sufficient to enable Herren to access any and all information remaining on the Herren laptop that had been assigned to Britton;

(iii)   prohibiting Britton or Mission Effect from using or disclosing any of Herren's confidential or proprietary information;

(iii)   prohibiting Britton from soliciting any Herren client in violation of her Retention Agreement through at least July 16, 2014;

(v)     prohibiting Britton from continuing to work, on her own or as an employee of Mission Effect, LLC, in violation of her Retention Agreement through at least July 16, 2014;

(vi)    prohibiting Britton from performing any work for the Navy that was obtained in violation of her fiduciary duty of loyalty to Herren.

b.      Compensatory damages in the amount of $500,000, with appropriate amounts trebled pursuant to Virginia Code §18.2-500;

c.      An accounting by Britton and Mission Effect of any profits received for

27

the above-mentioned actions;

d.      Disgorgement by Britton and Mission Effect of any profits received for the above mentioned actions, and/or creation of a constructive trust for the benefit of Herren thereto;

e.      Disgorgement by Britton of the salary she was paid by Herren during the period she was not a loyal employee of Herren;

f.      Punitive damages against Britton and Mission Effect in the amount of $350,000;

g.      Prejudgment interest on all damages awarded;

h.      Herren's costs and attorneys' fees; and

i.      Such other legal and equitable relief as the Court may deem appropriate.


WHEREFORE, Herren prays this Court to enter judgment in its favor and against

Maga and award it the following relief:

a.      Preliminary and permanent injunctive relief against Maga:

(i)     prohibiting Maga from engaging Britton to perform services in violation of her Retention Agreement through at least July 16, 2014 or one year from the Court's entry of judgment;

(ii)    prohibiting Maga from engaging Britton to perform any work for the Navy that was obtained in violation of her fiduciary duty of loyalty to Herren.

b.      Compensatory damages in the amount of $500,000, with appropriate amounts trebled pursuant to Virginia Code §18.2-500;

c.      An accounting by Maga of any profits received for the above-mentioned actions;

d.      Disgorgement by Maga of any profits received for the above mentioned actions, and/or creation of a constructive trust for the benefit of Herren thereto;

e.      Punitive damages against Maga in the amount of $350,000;

f.      Prejudgment interest on all damages awarded;

g.      Herren's costs and attorneys' fees; and

h.      Such other legal and equitable relief as the Court may deem appropriate.

WHEREFORE, Herren prays this Court to enter judgment in its favor and against

SPARC and Bowman and award it the following relief:

a.      Preliminary and permanent injunctive relief against SPARC and Bowman, prohibiting SPARC and Bowman from engaging or assisting  Britton to perform any work for the Navy that was obtained in violation of her fiduciary duty of loyalty to Herren.

b.      Preliminary and permanent injunctive relief against SPARC and Bowman ordering SPARC and Bowman to return to Herren and not to retain any and all Herren information obtained from Britton and Mission Effect;

c.      Compensatory damages in the amount of $500,000, with appropriate amounts trebled pursuant to Virginia Code §18.2-500;

d.      An accounting by SPARC and Bowman of any profits received for the above-mentioned actions;

e.      Disgorgement by SPARC and Bowman of any profits received for the above mentioned actions, and/or creation of a constructive trust for the benefit of Herren thereto;

f.      Punitive damages against SPARC and Bowman in the amount of $350,000;

g.      Prejudgment interest on all damages awarded;

h.      Herren's costs and attorneys' fees; and

i.      Such other legal and equitable relief as the Court may deem appropriate.

Respectfully submitted,

_____/s/_____
Susanne Harris Carnell, VSB #41521
Michael J. Lorenger, VSB #38910
LORENGER & CARNELL PLC
651 South Washington Street
Alexandria, VA  22314
Phone:  (703) 684-1804
Facsimile: (703) 684-1805
scarnell@lorengercarnell.com

Counsel for J.L. Herren & Associates, P.C.

## JURY DEMAND

Plaintiff demands a trial by jury of all causes of action contained herein.


_____/s/_____
Susanne Harris Carnell
Counsel for Plaintiff